*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0123p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 05-3008

ANDRE HYTHON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00111—James L. Graham, District Judge.

Argued: March 16, 2006

Decided and Filed: April 6, 2006

Before: DAUGHTREY and GILMAN, Circuit Judges; RUSSELL, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Steven S. Nolder, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Steven S. Nolder, FEDERAL PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Michael J. Burns, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge**.** The defendant, Andre Hython, appeals his conviction for possession of crack cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), following his guilty plea to the first count of a three-count indictment. Hython's plea was conditional, permitting him to challenge the district court's order denying his motion to suppress, in which he contended that police had seized the evidence used to convict him during a search of his home pursuant to a defective search warrant. The district court agreed that the warrant was deficient but denied Hython's suppression motion on the basis that the officers were reasonable in their reliance on the warrant and, therefore, that the *Leon* good-faith exception applied. Because we find, to the contrary, that no reasonably objective police officer could have concluded

_____

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

that the warrant was supported by probable cause, we hold that *Leon* is inapplicable in this case and that the motion to suppress should have been granted.

### FACTUAL AND PROCEDURAL BACKGROUND

The warrant in question was issued by a municipal judge and directed officers to a two-story brick residence located at 241 South Fifth Street in Steubenville, Ohio. It authorized the search of "all persons present at the time of officer entry" and the seizure of all property related to the sale of controlled substances. The judge issued the warrant on the basis of an affidavit sworn by Detective Jason Hanlin of the Steubenville Police Department Narcotics Division, which stated:

> Narcotics Officers from the Steubenville Police Department, Toronto Police and Jefferson County Sheriff's Office in a joint investigation conducted a controlled buy of crack cocaine from 241 South Fifth Street in the city of Steubenville.
>
> A reliable confidential informant advised officers that he was able to purchase crack cocaine from a female in Toronto. The female had advised the informant in the past that her source of crack cocaine is subject in the city of Steubenville. Officers provided the informant with one hundred and fifty dollars in marked US currency for a transaction. Officers conducted surveillance and were able to follow the informant to the known drug location in Toronto where the informant met with the female suspect. Officers were able to hear conversation via an audio transmitter. During the conversation the female received the currency from the informant and advised that she would travel to Steubenville to obtain the crack cocaine. Officers were then able to follow the female to 241 South Fifth Street in the City of Steubenville. The female entered the residence and exited within two minutes. Officers were then able to follow the female back to Toronto where she met with the informant and provided him with a baggie containing crack cocaine.
>
> Due to the above transaction with the residence, officers believe the[re] to be further crack cocaine within the residence.

Detective Hanlin and other officers executed the "no-knock" warrant later that same day. After entering the house with drawn weapons, the officers found five people in the house, including defendant Hython. Hython was in the living room with two other men; there were two females in the kitchen. Hython and the two others in the living room were handcuffed and read their *Miranda* rights. In response to a question from Detective Hanlin, Hython indicated that he had contraband in the right front pocket of his pants. A search of this pocket yielded two baggies containing crack cocaine. Detective Hanlin found a large wad of cash in Hython's left pocket, and currency was strewn on the floor in the area near where Hython had been standing at the time of the officers' entry. Hython told Detective Hanlin that he had been counting the currency that was found on the floor, which was later identified as the pre-recorded buy money.

Following indictment on charges growing out of the execution of the warrant, Hython filed separate motions to suppress his confession and all physical evidence seized from both his house and person. The district court found that the affidavit contained sufficient information from which the issuing judge could have concluded that the informant was reliable and that there was probable cause to believe that crack cocaine was being supplied from the residence at 241 South Fifth Street. The court also found, however, that the warrant was void for staleness because neither the affidavit nor the warrant specified the date on which the transaction at the defendant's house took place. Nevertheless, the district court held that apart from this defect, the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable and, therefore, that application of the good faith exception was warranted.

Next, the court addressed Hython's contention that the warrant was invalid because it authorized a search of all persons found within the residence. The judge found that the warrant contained insufficient probable cause to believe that every person in the two-story residence would be involved in the drug activity and, further, that no well-trained officer would have reasonably believed otherwise, militating against the application of the good faith exception to the warrant requirement. However, the judge observed that the search of Hython's person could be justified on different grounds: given the smell of marijuana in the house, Hython could have been arrested and the contraband inevitably discovered as the result of a search incident to that arrest. A ruling on this aspect of Hython's motion was deferred in order to hear testimony regarding the execution of the search warrant.

Following the evidentiary hearing, the district court denied Hython's motion to suppress his statements and held that the search of Hython's person was justified under the plain view rationale set forth in the earlier order. Hython subsequently pleaded guilty to a single count of the indictment, reserving the right to appeal the district court's rulings on his motions to suppress.

## DISCUSSION

The government does not contest the district court's legal conclusion that the warrant was invalid due to staleness. Therefore, the sole issue on appeal is whether the district court properly applied the good-faith exception to the search, a question that we review de novo as a conclusion of law. *See United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (the district court's application of the good-faith exception is a legal conclusion reviewed de novo).

*United States v. Leon* modified the exclusionary rule so as not to bar from admission evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. 897, 905 (1984). Where an officer's reliance on a warrant is objectively reasonable, the Supreme Court held, no additional deterrent effect will be achieved through the exclusion from evidence of the fruits of that search. *See id.* at 922. However, the good-faith exception is inapposite in four situations: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient. *See id.* at 923.

The record contains no indication that Detective Hanlin presented false or reckless statements to the magistrate; nor is there any indication that the magistrate acted merely as a rubber stamp or that the warrant was facially deficient. The question, therefore, is whether the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The showing required to establish that reliance was "objectively reasonable" is less than the "substantial basis" showing required to establish probable cause. *See United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc). "[I]t is entirely possible that an affidavit could be insufficient for probable cause but sufficient for good-faith reliance." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

The parameters of "objective reasonableness" in the good-faith context have been explored primarily in relation to whether an affidavit established a sufficient nexus between illegal activity and a place to be searched. *See Carpenter*, 360 F.3d at 594 (affidavit describing marijuana field near residence "fall[s] short of establishing required nexus" between criminal activity and residence);

*United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005) (no modicum of evidence connected defendant, criminal activity, and address to be searched); *United States v. Helton*, 314 F.3d 812, 821-23 (6th Cir. 2003) (outgoing calls from house to known drug dealer did not create substantial basis to believe evidence could be found in house); *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998) (affidavit did not establish any connection between target of investigation and home to be searched); *United States v. Weaver*, 99 F.3d 1372, 1378-79 (6th Cir. 1998) (boilerplate language in affidavit failed to provide particularized facts regarding alleged crime occurring on premises to be searched); *United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993) (minimal surveillance did not corroborate anonymous tip that narcotics could be found in basement of specific house); *see also United States v. Washington*, 380 F.3d at 248 (Moore, J., dissenting) (affidavit created only sparse and speculative connection between drug supplier and place to be searched). Although no bright-line rule dictates its outer limit, the zone in which the good-faith exception may be applied is bound on one end by the requirements of probable cause – once that standard is met, application of the exception is unnecessary. Therefore, the relationship between staleness and probable cause is a reasonable place to begin this analysis.

**A. Staleness and Probable Cause**

The probable cause inquiry gauges the likelihood that evidence of a crime may presently be found at a certain location. A warrant must be supported by "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*." *Sgro v. United States*, 187 U.S. 206, 210 (1932) (emphasis added). The expiration of probable cause is determined by the circumstances of each case, *see id.* at 210-11, and depends on the inherent nature of the crime. *See United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988). Relevant variables include "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?) the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (internal citation omitted). The passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime. *See Henson*, 848 F.2d at 1382; *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001).

The crime at issue in this case – the sale of drugs out of a residence – is not inherently ongoing. Rather, it exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den. The inclusion of outdated information has been insufficient to render an entire affidavit stale when the affidavit as a whole establishes that the criminal activity in question is ongoing and continuous, or closer to the "drug den" end of the continuum. In *Greene*, a search was upheld despite the fact that the last of 12 controlled buys took place 23 months prior to the issuance of the warrant. *See id.* The number of controlled buys, in combination with ongoing observation of the comings and goings at the residence, established probable cause to believe that the residence continued to be an operational base for a drug ring. *See id.* In *Spikes*, although some evidence in the affidavit was over four years old, 158 F.3d at 923, very recent information, coupled with surveillance over a span of years, established probable cause that the home to be searched was the primary source of crack cocaine in the town and that crack was regularly being manufactured on the premises. *See id.*

Unlike those detailed above, the affidavit in this case did not establish that 241 South Fifth Street was the secure operational base for an ongoing drug enterprise. Rather, the investigation consisted solely of one modified controlled buy, in which a confidential informant gave pre-recorded buy money to an unidentified female, who was followed to the address in question, observed entering and leaving, and who later delivered a baggie of crack cocaine to the confidential

informant.**[1]**  The only other possible suggestion that the house in question was an operational base for a continuing enterprise is that the unidentified female "advised the informant in the past that her source of crack cocaine is subject in the city of Steubenville."  Although this ambiguous language suggests that she had purchased crack more than once from someone in Steubenville, or perhaps even from someone residing at the South Fifth Street address, it does not eliminate the possibility that the criminal activity in question is very close to the opposite end of the continuum, where an individual occasionally sells drugs to acquaintances out of his or her personal holdings.  The fact that the confidential informant himself did not purchase the crack, but rather used the female as an intermediary, not only calls into question the degree of control involved in this "controlled buy," but it also militates against the conclusion that the premises at 241 South Fifth Street constituted an established and notorious drug den.  The single transaction is not supported by any further police investigation – the affidavit includes no observation of deliveries to the address, no monitoring of the frequency or volume of visitors to the house, no second controlled buy, no further surveillance whatsoever.

        More importantly, the affidavit offers no clue as to when this single controlled buy took place.  Because probable cause has a durational aspect, at least some temporal reference point is necessary to ascertain its existence. *See*, *e.g.*, *United States v. Harris*, 403 U.S. 573, 578 n.* (1971) (affidavit not stale or lacking in specificity when informant reported purchasing illegal items from defendant "within the past two weeks" as part of a regular pattern over a two year period); *United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993) (although affidavit provided no date for on-site surveillance, probable cause existed because affidavit indicated a 21-month time frame for illegal activity, and evidence was of durable nature).  Even had the affidavit stated that from time out of mind, 241 South Fifth Street had been a notorious drug den, some recent information would be necessary to eliminate the possibility that a transfer in ownership or a cessation of illegal activity had not taken place.  In this instance, without a date or even a reference to "recent activity," etc., there is absolutely no way to begin measuring the continued existence of probable cause. *See United States v. Williams*, 480 F.2d 1204, 1205 (6th Cir. 1973) (although affidavit did not allege date of informant's information, affidavit in its entirety "clearly rebuts any information or lack of specificity").  This deficiency alone is sufficient to render the warrant invalid, without considering any of the affidavit's other weaknesses.**[2]**  Thus, we agree with the district court's finding that the warrant was invalid on staleness grounds.

## B. Objectively Reasonable Reliance

        In the district court, Hython argued that the third exception to the *Leon* good-faith rule ought to apply in this case, namely that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  The district judge disagreed:

> In this case, the defendant is charged with offenses which occurred on April 20, 2004, the same date the search warrant was issued.  Although it is not stated in the affidavit, the affiant officer was aware of the fact that the purchase of crack cocaine described in the affidavit occurred on the same day that he applied for the search

---

**[1]**The affidavit in this case, unlike the one in *Laughton*, does not establish the reliability of either the tipster or the female supplier, nor does it assert that they were patted down to make sure that they were not carrying drugs at the time of the controlled buy, in an effort to eliminate them as the potential source for the drugs. *See Laughton*, 409 F.3d at 746.

**[2]**Hython also objected, for example, to the fact that the warrant was issued to search "all persons" at 241 South Fifth Street, which is a two-story residence, without any basis for establishing that all persons on the premises were likely to have evidence.  Because we have invalidated the search on other grounds, consideration of this issue is not necessary to the resolution of this appeal.

warrant.  In light of this information, the officer could reasonably have believed that the warrant was not an invalid warrant based on stale information.

* * * * *

Since search warrants are frequently obtained immediately after controlled purchases from a residence, it would not be totally unreasonable for an experienced officer to believe that this language implicitly indicated that the investigation was recent and ongoing rather than something which occurred in the distant past.

This analysis relies on information not contained in the affidavit, and as such, violates the rule of this circuit set out in *United States v. Laughton*, 409 F.3d at 751, in which we held that "a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit."  *Laughton* instructs that "the relevant question is whether the officer reasonably believed that the warrant was properly issued, *not* whether probable cause existed in fact." *Id.* at 752 (quoting *Carpenter*, 360 F.3d at 598 (Gilman, J., concurring)).  This bright-line rule is in harmony with the objective nature of the good-faith test and prevents reviewing courts from delving into an analysis of the subjective knowledge of affiants. *See id.*

The district court's decision predated *Laughton*.  In its analysis, the court placed emphasis on language from *Leon* stating that in determining whether a reasonably well-trained officer would have known that the search was illegal despite the warrant, "all of the circumstances . . . may be considered." *Leon*, 468 U.S. at 922, n. 23.  The district court also considered case law from other circuits, allowing consideration of extra-affidavit material, as well as the ambiguity in then-existing Sixth Circuit case law. *Compare United States v. Gahagan*, 865 F.2d 1490, 1498 (6th Cir. 1989 ) (relying on information known to officer but not included in warrant in determining good faith) *with United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998) (limiting inquiry to affidavit); *cf. Carpenter*, 310 F.3d at 618 ("We leave for another day the question of whether the search could have been saved under the 'good faith exception' on the basis that these officers had other information that was not presented to the issuing magistrate, but that would have established probable cause.").

The *Laughton* decision settled this ambiguity, and has since been reaffirmed in *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005), in which we determined that the rule announced in *Laughton* is inapplicable when the extra-affidavit information was made known to the issuing magistrate. *See id*. at 535.  In *Frazier*, the fact that two controlled buys, effectuated through a confidential informant, were tape-recorded by the police, was not included in the affidavit.  These recordings established the veracity of the informant, an element that the district court found lacking in its probable cause analysis. *See id*. at 532-33.  The issuing magistrate requested that the affiant officer include this information in his affidavit. *See id*. at 530.  Five of the six warrants requested in relation to the drug investigation were supplemented with this information, but the sixth – Frazier's – was not. *See id*.  Nevertheless, application of the exclusionary rule was not warranted given that the failure to amend the affidavit was nothing more than "a scrivener's error." *Id.* at 535. "Punishing [the affiant officer] for such a ministerial oversight would have no foreseeable deterrent effect on future police misconduct." *Id.*

The exception delineated in *Frazier* is in accord with the guiding principle of the *Laughton* rule, that "the test for good faith reliance, because it is an objective one, does not permit consideration of the executing officer's state of mind." *Laughton*, 409 F.3d at 750.  Where the record clearly indicates, as it did in *Frazier*, that the magistrate actually factored the omitted information into the probable cause determination, a reviewing court does not have to engage in an after-the-fact assessment of "how much affiants knew" and "when and from whom they learned it." *Id.* at 752.

The *Frazier* exception does not apply in this case. Although the district court felt that the affidavit "implicitly indicated" that the controlled buy had taken place in temporal proximity to the warrant application, the record does not make this fact explicit in any way, nor does it indicate an awareness on the part of the issuing magistrate of the timing of the controlled buy.

However, the district court concluded that even without considering information not included, the affidavit was not so lacking in probable cause that the officers executing the warrant were unreasonable in their reliance upon it:

> The affidavit states that the informant had purchased crack cocaine from a female in Toronto previously, and that this supplier had advised the informant in the past that she obtained her crack cocaine from a source in Steubenville. The affidavit also indicates that on the date of the sale, the supplier obtained her crack cocaine from the residence in Steubenville described in the warrant. This information could be construed as suggesting an ongoing drug operation based in the residence. The fact that a residence was involved suggests that the place to be searched for controlled substances was a base of operations where drugs could be found over a period of time, rather than, for example, a single sale at a public park.

For the reasons discussed above with respect to the relationship of probable cause to staleness, we cannot agree with the analysis of the district court on this point. The South Fifth Street transaction is not dated, and the affidavit contains no indication of ongoing investigation, subsequent or previous controlled buys, or further surveillance of the address or the female supplier. Any of these things might serve to establish that the house was the site of an ongoing criminal enterprise, or ground the undated controlled buy within a finite period of investigation. However, without any of these elements, the affidavit is patently insufficient. No well-trained officer could have reasonably relied on a warrant issued on the basis of this affidavit. In fact, it seems that only one officer, the one who filled out the warrant and had subjective knowledge of the proximity of this application to the facts set out in the affidavit, could have failed to notice this deficiency.

The majority in *Laughton* recognized that, in some cases, a warrant may be issued on the basis of an inference. In *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994), an experienced officer drew an inference from certain facts that the defendant was involved in specific criminal activity and that evidence of this activity could be found in safety deposit boxes. Although the facts set forth in the affidavit were insufficient to support a finding of probable cause, the nexus was not so remote as to render the officer's reliance on the warrant unreasonable. *Id.* at 1098. However, the affidavit before the court in *Laughton* contained a list "of the address of the premises to be searched, a summary of the [affiant]'s professional experience, and two acontextual allegations." 409 F.3d at 751. Judge Gilman, dissenting from the majority opinion in *Laughton*, felt that the majority's refusal to draw an inference between the address to be searched and the reference to "the home" and "the residence" made in the affidavit was an "unwarranted hypertechnicality." 409 F.3d at 752-53.

The probable cause inquiry necessarily involves inferences – between a confidential informant's past and future reliability, between an observed pattern of behavior and a suspected crime, or between the nature of a crime and the location of its evidence, for example. The dissent and the majority in *Laughton* disagreed about the distance that an inference (or inferences) may permissibly bridge in order to render reliance on a defective warrant objectively reasonable. But in each case, the inference is drawn between facts that are contained in the affidavit or warrant application, and *not* on assumptions about standard police practices or unasserted but hypothetically possible facts. In *Laughton*, the district court unacceptably assumed the existence of "information within the knowledge of the affiant, if he had been able or chose to state it properly, to establish probable cause." 409 F.3d at 751. It is equally unacceptable in this case to assume, as did the district court, that the affidavit described recent events because that is usually the way that investigations

proceed. This inference connects an event in the affidavit with an insufficiently substantiated assumption about police practice and, as such, is not a valid basis for rescuing the warrant.

### *CONCLUSION*

The district court correctly ruled that the warrant authorizing a search of 241 South Fifth Street was invalid due to staleness but nevertheless sustained the search on the basis of *Leon*. However, considering only those facts contained within the four corners of the affidavit, as instructed by *Laughton*, we conclude that the good faith exception may not be applied to the search in this case, because a well-trained officer could not reasonably rely on the affidavit, given that it was based on one undated, acontextual controlled buy. We therefore REVERSE the district court's resolution of the motion to suppress and remand the case to the district court for further proceedings consistent with this opinion.