HELENE N. WHITE, Circuit Judge.
I respectfully dissent. The majority fails to appreciate the significance of Bur-ney’s moving into the Litchfield property and wrongly imputes Ross’s alleged bad acts to Burney by relieving the Government of the obligation to show probable cause to believe that the property was still used as a “stash house” after Burney moved in. I would reverse the denial of Burney’s suppression motion and vacate his guilty plea.
I.
The affidavit dated June 30th, 2012, covered seventeen pages, pertained to seven residences, and was entirely premised on Ross’s alleged criminal enterprise. As the majority acknowledges, Burney was mentioned only one time, and only in relation to the Litchfield property. The pertinent section of the affidavit consists of three statements regarding the Litchfield property:
3.Since October of 2011, the Affiant has conducted surveillance of 2044 Litchfield Avenue several times, at various times of the day and night. On several occasions, the Affiant has observed vehicles that he knew Dion Ross to be driving parked in the driveway of the residence. For several months, it did not appear to the Affiant that anyone was residing at 2044 Litchfield Avenue, as the house appeared to be vacant from the street.
4. In June of 2012, the Affiant and other members of the RANGE Task Force observed a red 2003 Ford truck bearing Ohio registration FOM9952 parked in the driveway of 2044 Litch-field Avenue several times, most recently on June 30th, 2012.
5. Upon checking the registration through [a law enforcement database], the Affiant found that the vehicle was registered to [Burney] with an address of 2044 Litchfield Avenue. Upon checking Burney through various law enforcement databases, the Affiant found that -Burney is currently on parole through the State of Ohio for Possession of Drugs (crack) and Felonious Assault. The Affiant also' found that Burney has at least four previous convictions for Possession of Crack.
II.
A.
The affidavit is fraught with ambiguity, and the issuing magistrate should have demanded clarity before authorizing a search of Burney’s home. Nevertheless, the majority implies facts that are not supported by the record. For example, a material ambiguity in the affidavit stems from Officer McCoy’s statement that he saw vehicles associated with Ross at the property “several times” since October 2011. It is impossible to know how many times “several” indicates, or when he saw these cars (ie., just prior to Burney moving in or only in November 2011). Nevertheless, the majority concludes: “Fol *543 lowing the October 19th controlled buy, officers conducted spot checks of the Litchfield property and repeatedly observed Ross’s cars parked in the driveway.” This gives the unsupported impression that Ross’s cars were present at the Litchfield property as a matter of course in the months following October 2011. Ambiguous as it may be, the affidavit suggests that the vehicles associated with Ross stopped appearing at the property some “several month” period prior to June 2012. And, Officer McCoy’s testimony confirms that the majority’s conclusion is incorrect: no vehicles were seen at the property for at least “several months” prior to June 2012. Thus, at a minimum, several months went by where there was no indication that Ross or his associates were using the Litchfield property at all, much less as a “stash house.”
This faulty inference matters; that the house appeared to be occupied and visited by Ross or his associates, then went through a “several month” period of being unoccupied and unvisited, and then was occupied again (by Burney) in June 2012 leads to the conclusion, or at minimum raises the very significant probability, absent evidence to the contrary, that drug activity Ross or his associates may have conducted at the house had ceased.
B.
It is undisputed that Burney had a reasonable expectation of privacy in the Litch-field property. Accordingly, the officers needed a properly supported warrant to search his home. See, e.g., Kentucky v. King, — U.S. -, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011). For the warrant to be valid, the affidavit had to establish probable cause to believe that evidence of criminal activity would be found at the property notwithstanding the officers’ observations supporting that possession of the property had changed hands. See, e.g., United States v. Hython, 443 F.3d 480, 486 (6th Cir.2006) (“Even had the affidavit stated that from time out of mind [the location under investigation] had been a notorious drag den, some recent information would be necessary to eliminate the possibility that a transfer in ownership or a cessation of illegal activity had not taken place.”).
At bottom, the majority’s decision hinges on Ross’s de facto ownership of the Litchfield property through Brown-Jennings. In explaining how the affidavit supported the search warrant, the majority states: “First and foremost, Brown-Jennings held title to the property and the utilities for it were in her name, even though she did not live there.” But as the majority acknowledges, “The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific ‘things’ to be searched for and seized are located on the property to which entry is sought.” Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). Had Burney not moved into the property, there would be no problem searching the property based on the observations in the warrant. But, Burney’s moving in and listing the property as his residence after it was unoccupied signaled a change of possession and control and, therefore, a more thorough review of the affidavit was required to ensure that Burney’s constitutional rights were not violated. See Hython, 443 F.3d at 486. Brown-Jennings’s title to the Litchfield property would not support a search without some indication that she or Ross continued to have a connection to the premises other than mere title.
The majority necessarily assumes that Ross’s use of the property continued de *544 spite Burney’s moving in. Without some indication that Ross’s use of the Litchfield property continued after Burney moved in, there is no justification for treating the change of residence as insignificant. See id. As in Hython, given the length-of time between the alleged criminal activity and the application for the search warrant, coupled with Burney’s newly established residence at the property, “there is absolutely. no way to begin measuring the continued existence of probable cause.” Id. (citing United States v. Williams, 480 F.2d 1204, 1205 (6th Cir.1973)). This renders the warrant invalid.
The majority suggests that because the timing of Burney’s arrival loosely coincided with an alleged imminent drug transaction orchestrated by Ross, it was more reasonable to search the Litchfield property. Burney moved into the Litchfield property in early-June 2012; the cocaine shipment that prompted the search was allegedly supposed to arrive in the Dayton area on June 30, 2012, and was not linked to a particular location (and certainly not the Litchfield property).[1] It cannot fairly be said that Burney’s appearance at the property, nearly a month before an alleged cocaine shipment was scheduled to arrive at an unknown location somewhere in the Dayton metro area, established a “fair probability” that Burney had taken up residence to assist in the drug distribution, especially when there is nothing tying him to drug distribution, Ross’s enterprise, or any other part of the conspiracy.
Because at the time the warrant was obtained Burney was the sole occupant of the Litchfield property and the affidavit offered no reason to believe that criminal activity was still afoot at the home, I would find the warrant invalid.
C.
Burney must also show that the affidavit was so facially defective that no reasonable officer could have relied on it. Even if later held to be invalid, as a general matter, an officer may rely on a facially valid warrant, United States v. Leon, 468 U.S. 897, 920, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); but Leon’s good-faith exception does not apply if, inter alia, the officer’s reliance on the warrant was not in good faith or objectively reasonable, id. at 923, 104 S.Ct. 3405.
At the suppression hearing, Officer McCoy, who was both the affiant and on the team executing the warrant, testified that the confidential informants he had worked with “did not mention anything about Jeffrey Burney to [him]”; that he had not seen any activity at the house after October 2011 other than cars occasionally parked in the driveway; that he “didn’t think anybody was living” at the Litchfield property for a several month period; that he was aware Burney had *545 claimed the Litchfield property as his home in early-June 2012, nearly a month before the search warrant was obtained; and that he had not observed Burney do anything illegal. Officer McCoy did not offer any basis to conclude that Burney was part of Ross’s enterprise, that criminal activity had occurred at the Litchfield property after Ross’s visit in October 2011, or that Burney was only using part of. the home (meaning the remainder was still under Ross’s control). Accordingly, Officer McCoy could not reasonably believe that he had probable cause to search the Litchfield property; thus, he could not rely on the warrant’s facial validity and the Leon good-faith exception does not apply.
III.
For these reasons, I would reverse the district court’s suppression ruling and vacate Burney’s guilty plea.

. In the proceedings below and in its brief on appeal, the Government makes clear that the search warrant was based on an impending shipment expected to arrive somewhere in Dayton on June 30, 2012: "Based on Ross’s tacit representations that he soon expected to receive a shipment of drugs [on June 30, 2012], police conducted surveillance-at several stash houses — including the Litch-field residence.” According to the Government, "Given the timing of these events, a fair probability existed that Mr. Burney had arrived at a location Ross owned to assist in the distribution of the impending shipment of cocaine.” Thus, it is clear that the affidavit's reference to a "large load of cocaine” that had been seized on June 24, 2012 was not the basis for obtaining the search warrant, and there is no other basis in the affidavit to support the majority’s conclusion that Bur-ney’s continued presence at the Litchfield residence was premised on "Ross’s receiving a sizeable shipment of drugs.” The majority reads more into the affidavit than is warranted.