**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 17a0626n.06**

**No. 16-3233**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| FRANCISCO RODRIGUEZ, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

**FILED**
Nov 09, 2017
DEBORAH S. HUNT, Clerk

BEFORE: BOGGS, BATCHELDER, and KETHLEDGE, Circuit Judges.

BOGGS, Circuit Judge. Francisco Rodriguez was convicted of conspiracy to distribute and possess with intent to distribute cocaine and marijuana, and possession of 14.5 kilograms of cocaine. He now appeals the district court's denial of his motion to suppress evidence seized during two searches of his residence. The evidence included approximately $19,000 in cash and 14.5 kilograms of cocaine. We affirm.

**I.**

Rodriguez entered a conditional guilty plea to conspiracy to distribute and possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and 846, and possession of 14.5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), which was seized in a search of his residence. Twenty-seven co-defendants were also charged for their roles in the trafficking conspiracy. As a condition of his

guilty plea, Rodriguez reserved his right to appeal the district court's denial of his motion to suppress the seized evidence.

Both searches were conducted pursuant to search warrants, based on affidavits submitted by DEA Agent Mark Apple. The 2009 search warrant was issued by a United States magistrate judge, and the 2011 warrant was issued by an Ohio state court judge. Rodriguez argues that the search-warrant affidavits were fatally deficient because there was an insufficient nexus between evidence of drug trafficking and Rodriguez's residence, and because the information in the affidavits was stale.

## II.

Whether a search warrant affidavit establishes probable cause to conduct a search is a legal question that this court reviews de novo. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). However, the court must give the determination of the issuing magistrate "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). On appeal of a district court's decision on a motion to suppress, the court must view the evidence "in a light most likely to support the decision of the district court," *Frazier*, 423 F.3d at 531 (citing *United States v. Heath*, 259 F.3d 522, 528 (6th Cir. 2001)), but "[w]hen the district court itself is a reviewing court . . . this court owes the district court's conclusions no particular deference." *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996).

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The affidavit supporting the search warrant must demonstrate

a specific and concrete nexus between the evidence sought and the place to be searched. *United States v. Carpenter*, 360 F.3d 591, 594–95 (6th Cir. 2004) (en banc). The court uses a totality-of-the-circumstances test to determine whether the affidavit establishes a proper nexus. *Gates*, 462 U.S. at 238.

**A.**

Viewed in the totality of the circumstances, both affidavits provided probable cause to justify the issuance of search warrants for Rodriguez's residence. Agent Apple's 2009 affidavit states that Rodriguez's co-conspirator Moises Razo repeatedly boasted about having a supplier with "a lot" of cocaine and that Razo's movements pre- and post-drug sale were consistently linked to Rodriguez's residence. After controlled buys between a confidential informant ("CI") and Razo on November 20 and December 2, 2008, surveillance showed Razo driving his vehicle to Rodriguez's home. The affidavit also discussed a failed attempt to purchase cocaine from Razo, which strongly suggested that Rodriguez's home was the source of Razo's cocaine. On December 16, 2008, the CI contacted Razo about purchasing cocaine. Razo then traveled to Rodriguez's home, but returned to the CI without any cocaine. Razo reported that his source of supply was out of town. That same day, the Agent conducted surveillance on Rodriguez's home and did not see any activity, indicating that Rodriguez may have been out of town. Finally, on January 27, 2009, the CI contacted Razo about purchasing cocaine. At the time, Razo's vehicle was parked at Rodriguez's home. Razo left Rodriguez's home to meet the CI and completed the purchase of cocaine. Razo then returned to Rodriguez's home.

The 2011 affidavit reiterated much of the information from the 2009 affidavit, but also added information about new drug sales that had occurred just days before the issuance of the second warrant, in January 2011. Surveillance showed that Rodriguez was at his home

immediately prior to a meeting in which cocaine was present.  The CI noted that the cocaine at the meeting appeared to have been "frozen," and surveillance of Rodriguez's property revealed that he owned storage buildings and sheds at the back of the property, which Agent Apple believed may have been used to store the cocaine in the January winter.

Rodriguez concedes that there is a "torrent of evidence linking Moise[s] Razo and his residence with evidence of drug trafficking," Appellant Br. 17, but cites this court's opinion in *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016), to argue that there was too little nexus between Razo's drug activity and Rodriguez's residence.  This case is distinguishable from *Brown*.  Razo's boasts about having a supplier with significant amounts of cocaine, coupled with Razo's consistent presence at Rodriguez's residence directly before and after numerous cocaine sales, provided the nexus to establish a "fair probability" that evidence pertaining to the drug trafficking would be found at Rodriguez's home.  *Gates*, 462 U.S. at 238.

**B.**

Rodriguez also relies on *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006), to argue that the information in the two affidavits was stale.  We have noted that if information contained in the affidavit is stale or outdated, it decreases the likelihood that a sufficient nexus exists.  *Id.* at 486.  But we also noted that "[t]he passage of time becomes less significant when the crime at issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *Id.* at 485.  Even where an affidavit includes outdated information, "[t]he inclusion of outdated information has been insufficient to render an entire affidavit stale when the affidavit as a whole establishes that the criminal activity in question is ongoing and continuous, or closer to the 'drug den' end of the continuum." *Id.*

Critically, the information in the *Hython* affidavit did not indicate that there was ongoing drug activity in the residence. *Id.* at 486. Here, the affidavits made clear that the investigation of Rodriguez had lasted for several months (by the time of the 2009 affidavit), and three years (by the time of the 2011 affidavit). The affidavits describe a pattern of recent drug-trafficking activity, suggesting that Rodriguez's home was used as a distribution point.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.