NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0425n.06

No. 19-4117

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>Jul 22, 2020<br>DEBORAH S. HUNT, Clerk |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| ROBIN RUTLEDGE, | ) ) | COURT FOR THE NORTHERN DISTRICT OF |
| Defendant-Appellant. | ) ) | OHIO |
| | ) | |

BEFORE: GILMAN, BUSH, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** As part of a controlled buy, police officers observed Arthur Brantley accept a customer's money, travel to Robin Rutledge's home, and then return to the customer with cocaine. Upon securing a search warrant for Rutledge's home, officers discovered large quantities of cocaine, marijuana, and guns. Following his indictment on various drug and firearms charges, Rutledge moved to suppress the evidence discovered in his home. The district court agreed with Rutledge that the warrant lacked probable cause, but the court did not exclude the evidence, concluding that the officers relied on the warrant in good faith. Because there was probable cause justifying the search, the district court need not have reached the question of good-faith reliance. On that alternative basis, we **AFFIRM** the judgment below.

**BACKGROUND**

Acting on corroborated information provided by confidential informants, officers undertook an investigation of Arthur Brantley's alleged cocaine distribution. Officers proceeded

to conduct a series of controlled buys from Brantley. In the process of preparing for these buys, officers learned that when Brantley met with a potential customer who wanted to purchase large quantities of cocaine, it was Brantley's practice to meet the customer, take their money, drive to his supplier to acquire the cocaine, and then return to the customer to deliver the cocaine. During one of these controlled buys, the confidential informant requested a large quantity of cocaine from Brantley. Consistent with prior practice, Brantley told the informant that he would need to retrieve the cocaine from his supplier.

Enter Robin Rutledge. Unaware that he was being trailed by officers, Brantley proceeded to enter Rutledge's home, exiting less than ten minutes later. Brantley then met with the informant at a pre-arranged location and delivered the cocaine. Although Rutledge had not been known previously to be a supplier to Brantley, officers had observed a "high volume" of transient vehicle and foot traffic at Rutledge's home in an unrelated drug investigation, potentially consistent with drug trafficking.

From this information, officers sought and acquired a warrant to search Rutledge's home. Upon executing the warrant, officers discovered a large amount of cocaine as well as marijuana, firearms, and ammunition. Rutledge was later indicted for possession with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(1)(D), for being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and for possession of firearms in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Rutledge moved to suppress the evidence seized pursuant to the search warrant. The district court agreed that the warrant lacked probable cause, but nonetheless denied the motion to suppress on the basis of the *Leon* good-faith exception. *See United States v. Leon*, 468 U.S. 897,

922 (1984). Rutledge then pleaded guilty to possession with intent to distribute cocaine and to possession of firearms in furtherance of drug trafficking, while preserving his right to appeal the district court's denial of his suppression motion. The district court sentenced Rutledge to 61 months of incarceration, and Rutledge timely appealed.

## ANALYSIS

When reviewing a district court's denial of a motion to suppress, we review legal conclusions de novo and factual findings for clear error. *United States v. McCauley*, 548 F.3d 440, 443 (6th Cir. 2008) (citing *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005)). In so doing, we "must consider the evidence in the light most favorable to the district court's decision." *Id.* (citing *United States v. Moncivais*, 401 F.3d 751, 754 (6th Cir. 2005)).

The Fourth Amendment protects against "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. To achieve those protections, the Amendment commands that "[n]o Warrants shall issue, but upon probable cause . . . ." *Id.*

Probable cause is "not a high bar to clear." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (cleaned up), *cert. denied*, 140 S. Ct. 414 (2019). To do so, officers must demonstrate only "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quoting *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) (cleaned up). In assessing whether that standard is met, we pay "great deference to the finding of the probable cause by the state court judge issuing a warrant." *United States v. McLevain*, 310 F.3d 434, 439 (6th Cir. 2002). It follows that when we review whether an affidavit was sufficient to support the probable-cause finding necessary for a search warrant to

issue, we ask whether the issuing judge "had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *Brown*, 732 F.3d at 573.

Viewed in this light, the controlled buy together with the observed high volume of vehicle and foot traffic to Rutledge's home were sufficient to establish probable cause.

Start with the controlled buy. A reliable confidential informant detailed Brantley's practice with customers seeking large quantities of cocaine: Brantley would meet with the customer, take her money, drive to his supplier, and then return to deliver the cocaine. The officer affiant added that this business model was used by drug traffickers to minimize the risk of being caught with large amounts of drugs. Brantley followed this playbook during the controlled buy. He met with the confidential informant, took the informant's money, drove to Rutledge's home, and then returned to deliver the cocaine to the informant. After Brantley initially met the confidential informant, officers observed Brantley drive to Rutledge's home, enter through the front, and then leave the home less than ten minutes later, before re-convening with the informant to deliver the cocaine. Officers' corroboration of the informant's assertion that Brantley routinely engaged in this particular practice goes a long way in establishing probable cause that Rutledge was involved in drug dealing. *See United States v. Strickland*, 144 F.3d 412, 416 (6th Cir. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 225 (1983)) (explaining that officers' corroboration of a particular modus operandi alleged by an anonymous tip was sufficient to make out probable cause for a search warrant).

And add to that indicia of criminality the fact that officers had previously observed high-volume, short-visit traffic at Rutledge's home. Although that history alone may not support a finding of probable cause to believe that drug trafficking occurred in a particular location, it is

often sufficient when paired with other corroborating evidence. *United States v. Roberson*, 332 F. App'x 290, 295 (6th Cir. 2009). Here, the high-volume, short-visit traffic combined with Brantley stopping at Rutledge's home during a controlled buy, consistent with Brantley's practice in dealing large quantities of drugs, is enough to clear the bar of probable cause.

*United States v. Hython* does not counsel otherwise. 443 F.3d 480 (6th Cir. 2006). There, the government conceded that a search warrant lacked probable cause because the only evidence supporting the search was one controlled buy, on an unknown date, carried out by an unidentified individual. *Id*. at 483–84. Probable cause was thus lacking because 1) the absence of a date on which the controlled buy occurred made it impossible to assess whether the buy was "stale" for the purposes of establishing probable cause, and 2) the controlled buy was a "single transaction" unaccompanied by "monitoring of the frequency or volume of visitors to the house" or "observation of the comings and goings at the residence." *Id*. at 485–86. That is a far cry from today's case. Not only did the affidavit list the week in which the controlled buy took place, but the affidavit also was written and filed the very next week, leaving no risk of the buy being stale. *See United States v. Harris*, 403 U.S. 573, 579 n.* (1971) (rejecting the argument that an affidavit was too stale to establish probable cause because the informant reported buying illegal whiskey "within the past 2 weeks" of the affidavit). And unlike in *Hython*, the affidavit explicitly indicated that officers had monitored Rutledge's home and found high-volume foot and vehicle traffic, suggesting his home was more than the site of a single transaction.

True enough, the affidavit did not identify Rutledge by name. But search warrants are "not directed at persons," but rather places and things, and so they need not include the "name or a description of the person" to establish probable cause. *United States v. Ellison*, 632 F.3d 347, 350 (6th Cir. 2011) (citing *United States v. Pinson*, 321 F.3d 558, 564–65 (6th Cir. 2003)). Most

critical to the affidavit was the fact that Rutledge's home was the one observed during Brantley's surveilled drug deal, and it was similarly observed as the source of high-volume traffic indicative of drug dealing. There was thus probable cause to search Rutledge's home, and the officers' lack of knowledge of who owned the home does not negate that. Lastly, because probable cause justified the search warrant, we need not address issues regarding the *Leon* good-faith exception. *Hython*, 443 F.3d at 485 ("[T]he zone in which the good-faith exception may be applied is bound on one end by the requirements of probable cause—once that standard is met, application of the exception is unnecessary.").

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.