NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0429n.06

No. 24-6087

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 18, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| MYSHUN JEFFERSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: MOORE, CLAY, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Myshun Jefferson appeals the district court's denial of his motion to suppress. We AFFIRM.

## I. Background

### A. Factual Background

In May 2023, Bartlett Tennessee Police Department (BPD) officers met with a confidential source (the CS) who said that Jefferson was selling fentanyl from two addresses in Memphis, Tennessee: 2846 Baywood Drive (the Baywood Residence) and 3176 Powell Street (the Powell Residence). The CS told the officers that transactions typically happened outside the residences after phone contact with Jefferson, but that the CS had been inside both houses to buy drugs and had seen "large amounts of various narcotics" inside. R. 28-1, PID 71.

The next day, the officers met with the CS again. At the officers' direction, the CS called Jefferson and arranged to buy $400 worth of fentanyl. Officers monitored the controlled buy,

which occurred at the Baywood Residence, and tested the substance the CS purchased, which weighed 7.2 grams and tested positive for fentanyl.

Officers met with the CS again sometime between June 5 and June 10, 2023. The same day as that meeting, the CS called Jefferson and set up a second controlled buy for $400 worth of fentanyl. Jefferson directed the CS to the Powell Residence—an address the CS knew because the CS had previously purchased narcotics from Jefferson there. When the CS arrived, someone the CS did not know sold the CS the drugs. Officers monitored the transaction and tested the substance the CS purchased, which weighed 7.1 grams and tested positive for fentanyl.

Officers also surveilled the Baywood Residence for several days. When vehicles pulled up in front of the house, men left the house and briefly met with the vehicles' occupants. This pattern was consistent with both of the controlled buys that the officers observed and the CS's descriptions of previous transactions with Jefferson. Officers also saw Jefferson leave the Baywood Residence and return in an orange Dodge Challenger with temporary tags that was present during the first controlled buy.

BPD Detective John White sought and obtained a search warrant for the Baywood Residence (the Warrant) on June 10, 2023. In his affidavit in support of the warrant application (the Affidavit), White set forth the facts above and averred that he had twenty years of law-enforcement experience; that he had been assigned to the BPD Narcotics Unit since March 2022; and that, based on his training and experience, he was familiar with the general characteristics of drug trafficking, including the use of cash, cell phones, cars, and secondary addresses; certain methods of record-keeping; and firearm possession.

When officers executed the Warrant on June 12, 2023, they found multiple unregistered firearms and ammunition: a Glock 22 .40 caliber handgun with an extended magazine and a

machinegun conversion device; a stolen Glock 19X 9mm handgun with a machinegun conversion device; a Radical Firearms Model RF-15, AR-style pistol; a JTS M12AK, 12-gauge shotgun; assorted ammunition; and a loose magazine loaded with ammunition. They also found 56 Alprazolam bars, 503.3 grams of fentanyl, and three cellphones.[1]

## B. Procedural History

On September 19, 2023, a grand jury indicted Jefferson on charges of Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 1), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c) (Count 2). Jefferson initially pleaded not guilty to both counts.

Jefferson then moved to suppress the evidence found at the Baywood Residence. He argued that (1) the Affidavit did not allege ongoing drug activity sufficient to establish a nexus with the Baywood Residence, (2) the information in the Affidavit was stale, and (3) the good-faith exception did not apply.

Once the motion to suppress was ripe, the assigned magistrate judge issued a Report and Recommendation (R&R) that recommended denying the motion. The magistrate judge first found that the Affidavit established a nexus between criminal activity and the Baywood Residence based on the first controlled buy, the surveillance of the house, and the CS's allegations, which were significant because the Affidavit contained indicia of the CS's reliability. The magistrate judge also concluded that the information about the first controlled purchase was not stale because the Affidavit tended to show that Jefferson was engaging in ongoing drug sales and, in any case, the

---

[1] Officers also executed a search warrant at the Powell Residence "[i]mmediately following" their search of the Baywood Residence. R. 67, PID 230. During that search, they found a loaded Glock .40 caliber handgun, a Glock .22 caliber pistol, 241.7 grams of marijuana, 45 Oxycodone 15mg pills, 32.5 Alprazolam 2mg pills, and two digital scales. Jefferson does not challenge the Powell search.

second controlled buy refreshed the older information.  Finally, the magistrate judge determined that, even if the Affidavit failed to establish probable cause, the good-faith exception would apply because the Affidavit set forth enough particularized facts to support reasonable reliance.

Jefferson objected, largely reiterating his previous arguments.  The district court overruled those objections, adopted the R&R in its entirety, and denied the motion to suppress.  Jefferson then pleaded guilty to both counts, entering a conditional plea pursuant to Federal Rule of Criminal Procedure 11(a)(2) that reserved his right to appeal the district court's denial of his motion to suppress.  Following the guilty plea, the district court sentenced Jefferson to consecutive sentences of 57 months on Count 1 and 60 months on Count 2, for a total term of 117 months of incarceration, along with three years of supervised release and a $200 special assessment.

Jefferson now appeals the district court's denial of his motion to suppress.

## II.  Discussion

### A.  Standard of Review

When reviewing a district court's ruling on a motion to suppress, we review factual findings for clear error and legal conclusions de novo.  *United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008).  In doing so, "we must afford due weight to the factual inferences and credibility determinations made by the district court," *id.*, and view the evidence in the light most likely to support the district court's decision, *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019).  "A denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason" supported by the record.  *Id.* (cleaned up).  Additionally, we interpret affidavits using common sense, without "imposing technical requirements of elaborate specificity."  *United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002) (cleaned up).

The movant bears the burden of proof on a motion to suppress. *United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991).

## B. Analysis

Jefferson makes three arguments: (1) that the Affidavit did not establish a nexus between the Baywood Residence and criminal activity, (2) that the information about the first controlled buy could not support a probable-cause determination because it was stale, and (3) that the good-faith exception does not apply. Because the first two arguments do not persuade, we affirm without reaching the third.

### 1. Nexus

A search warrant may not issue without probable cause. U.S. Const. amend. IV. "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (internal quotation marks and citation omitted). "This requires a nexus between the place to be searched and the evidence sought." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (internal quotation marks and citation omitted). In other words, the issuing magistrate must have "reasonable grounds for belie[ving]" that evidence will be found at the specific location to be searched, "supported by less than prima facie proof but more than mere suspicion." *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003) (internal quotation marks and citation omitted).

Jefferson contends that the Affidavit does not meet this standard because it "was based upon only his status as a drug dealer" and the only information in the Affidavit showing a nexus between the Baywood Residence and drug trafficking was the first controlled purchase.

Appellant's Br. at 18. However, as the magistrate judge explained, this argument does not account for the full contents of the Affidavit.

First, the Affidavit states that the first controlled purchase happened at the Baywood Residence. That incident helps establish a nexus between drug dealing and that property. *See United States v. Jones*, 159 F.3d 969, 974–75 (6th Cir. 1998) (finding a nexus between drug dealing and the residence to be searched where a confidential informant had made multiple controlled buys, law-enforcement officials monitoring the confidential informant via audio surveillance had heard drug transactions while the confidential informant was at the defendant's residence, and the confidential informant had attested to seeing cocaine at the defendant's residence); *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) ("The affidavit explained that a confidential informant had observed someone come out of Ellison's residence, engage in a drug transaction, and then return into the residence. These incriminating actions are inextricably connected to the residence for which the search warrant was sought.").

Second, the Affidavit describes the officers' surveillance, during which they saw a pattern of cars pulling up in front of the Baywood Residence and men leaving the house to briefly meet with the persons in the cars and then returning to the house. That pattern is associated with drug activity. *See United States v. Sadler*, 24 F.4th 515, 529 (6th Cir. 2022) (describing a drug sales pattern in which customers would make contact by phone and be directed to a meeting spot, where runners would briefly approach the waiting cars to deliver drugs); *Jones*, 159 F.3d at 974 ("Knowledge of illegal drug activities, obtained by law enforcement officials through a confidential informant and independent surveillance, supports a district court's finding of probable cause to support the issuance of a warrant.").

Finally, although Jefferson argues that the Affidavit lacks indicia of the CS's reliability, the officers' surveillance and the two controlled buys detailed in the Affidavit corroborate the CS's information, thus demonstrating the CS's reliability. *See United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) ("[W]hile an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form. The affidavit could state that police corroborated significant parts of the informant's story." (internal citation omitted)); *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994) ("[T]he extent to which [a confidential informant's] tip is corroborated by the officers' own investigation is significant."); *United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008) ("The independent corroboration conducted by the police . . . provided other indicia of [the confidential informant's] reliability . . . ."). The magistrate judge could therefore consider credible the CS's statements about seeing and purchasing narcotics at both the Powell and Baywood Residences, which speak to a nexus between the Baywood Residence and drug dealing.

2. Staleness

"[S]tale information cannot be used in a probable cause determination." *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). Whether information is stale depends on the facts of the specific case, including "the inherent nature of the crime." *Id*. at 378 (internal quotation marks and citation omitted). Potentially relevant factors that courts should consider include "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (internal quotation marks and citation omitted). "The passage of time becomes less significant when the crime at

issue is ongoing or continuous and the place to be searched is a secure operational base for the crime." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006).

Jefferson's second argument is that the information about the first controlled buy in May 2023 was stale because officers did not execute the Warrant until June 12, 2023. Therefore, he says, information about that controlled buy could not support a probable cause determination. We disagree.

As to the first factor, "the sale of drugs out of a residence . . . exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den." *Hython*, 443 F.3d at 485. The latter end of that continuum constitutes criminal activity that is "ongoing and continuous," such that the "inclusion of outdated information" is "insufficient to render an entire affidavit stale." *Id.*

Contrary to Jefferson's argument, the controlled buy in May 2023 need not stand alone when applying the first *Spikes* factor. Rather, we consider it in the context of the other information in the Affidavit; in particular, the second controlled buy at a location where Jefferson directed the CS to go, the officers' surveillance of the Baywood Residence, and the CS's other statements. The facts, taken together, show Jefferson was engaged in ongoing drug dealing. The first *Spikes* factor thus counsels against staleness. *Id.* ("The number of controlled buys, in combination with ongoing observation of the comings and goings at the residence, established probable cause to believe that the residence continued to be an operational base for a drug ring." (describing *Greene*, 250 F.3d at 481)).

The second and fourth *Spikes* factors—the criminal and the place to be searched, respectively—do not support a finding of staleness, either. The controlled buys at both Residences,

the pattern of cars and meetings outside of the Baywood Residence, and officers observing Jefferson at the Baywood Residence show that he was entrenched at the Baywood Residence and used it as an established base of operations. *See United States v. Sims*, 975 F.2d 1225, 1238 (6th Cir. 1992) (noting that "drug traffickers . . . often use more than one residence as a base of operations").

The only *Spikes* factor to point the other way is the third—the nature of the thing to be seized. True, as Jefferson argues, narcotics are perishable and easily transferred between persons. But the other three factors point to an ongoing drug-distribution conspiracy operating out of the Baywood Residence. And "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *Greene*, 250 F.3d at 481. We therefore reject Jefferson's argument that the information about the first controlled buy was stale and could not support a finding of probable cause to search the Baywood Residence.

*     *     *

For the reasons set out above, we AFFIRM.