RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 17-1799

TYRONE DEXTER CHRISTIAN,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:15-cr-00172-1—Robert J. Jonker, Chief District Judge.

Argued: March 9, 2018

Decided and Filed: June 26, 2018

Before: GILMAN, ROGERS, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Daniel A. Bihrle, UNIVERSITY OF TENNESSEE, Knoxville, Tennessee, for Appellant. Timothy VerHey, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Daniel A. Bihrle, Lucille A. Jewel, Wesley S. Love, Grant E. Mitchell, Jack F. Smith, UNIVERSITY OF TENNESSEE, Knoxville, Tennessee, for Appellant. Timothy VerHey, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

GILMAN, J., delivered the opinion of the court in which STRANCH, J., joined. ROGERS, J. (pp. 33–40), delivered a separate dissenting opinion.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Tyrone Christian was convicted by a jury for (1) possessing a controlled substance with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (2) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (3) possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Before trial, Christian sought to suppress evidence obtained via a search warrant that he argued was not supported by probable cause.  He also challenged the admission at trial of a recorded telephone call between two other individuals on the grounds that it was inadmissible hearsay.  The district court denied the motion to suppress and admitted the recording of the call.

Christian renews both challenges on appeal.  For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

On September 3, 2015, a state magistrate issued a search warrant for Christian's residence located at 618 Grandville Avenue in Grand Rapids, Michigan (the Residence), based on information contained in a four-and-a-half-page affidavit prepared by Thomas Bush, a Grand Rapids police officer.  But the equivalent of only one page of the affidavit is dedicated to facts specifically related to Christian.  The rest concerns generic information, including Officer Bush's qualifications and the nature of drug investigations.

The search was carried out shortly after midnight on September 4, uncovering various quantities of heroin, cocaine, and marijuana, as well as two firearms and sandwich bags with cut corners.  Christian was not present for the search, but was stopped and detained in his car nearby.

Before trial, Christian sought to suppress the evidence from the search of the Residence, arguing that the warrant was not based on probable cause.  The district court denied the motion,

and the evidence was introduced at trial. Christian was convicted on all three counts with which he was charged. He now timely appeals his conviction, contending that the district court erred when it allowed evidence from the search to be introduced at trial.

Officer Bush's affidavit sought authorization to search the Residence for controlled substances, firearms, records relating to trafficking in controlled substances, and any quantities of cash that might be proceeds from the sale of controlled substances. In support of his request, Officer Bush outlined his qualifications and experience in investigating drug crimes and noted that he and other law-enforcement officers had become "involved in a drug investigation involving Tyrone Christian." He also provided six assertions of factual support relating to Christian:

- The Grand Rapids Police Department had previously executed two search warrants at Christian's residence in 2009 and 2011 as part of drug investigations targeting Christian. Arrests resulted from both searches (including the arrest of Christian's wife for "maintaining a drug house").

- Christian has been convicted of several drug-related crimes over a nineteen-year period: (1) possession of cocaine in 1996, (2) an unspecified second controlled-substance offense in 2002, (3) delivery/manufacture of marijuana and possession of a firearm by a felon in 2009, and (4) delivery/manufacture of cocaine in 2011.

- In December 2014, Officer Bush "had contact with a credible and reliable informant who provided information on several drug traffickers including Tyrone Christian." The affidavit states that the unnamed informant "provided names, nicknames, phone numbers, residences utilized by the drug traffickers and information regarding specific drug transactions," and that Officer Bush was "able to confirm much of the information provided."

- At the direction of Officer Bush, the informant conducted a controlled purchase of drugs from Christian at the Residence in January 2015, eight months before the warrant in question. The affidavit notes that the drugs purchased were field tested with positive results.

- "Within the last four months, [Officer Bush] has been involved in or received information from several debriefs of subjects who have stated that Tyrone Christian is a large scale drug dealer. These subjects further stated that they have purchased large quantities of heroin and crack cocaine from Christian at 618 Grandville Avenue [] in the last four to five months."

- On September 3, 2015—the date that the warrant was requested and issued—surveillance of the Residence was established. A subject later identified as Rueben Thomas was seen "walk[ing] away from the area of 618 Grandville Avenue and leav[ing] the area in a

vehicle." Surveillance of the vehicle continued until officers conducted a traffic stop for a civil infraction. During the stop, officers seized approximately 20 grams of heroin from the vehicle. Thomas admitted to being on Grandville Avenue, but denied being at the Residence, "contrary to observations of the law enforcement officers."

In addition to contesting the validity of the search warrant, Christian argued at trial that statements made during a recorded telephone call between Rueben Thomas and Thomas's girlfriend, Tanisha Edwards, constituted inadmissible hearsay and thus should not be admitted. The call occurred while Thomas was in jail following his arrest on September 3, 2015. Edwards informed Thomas during the call that he should be grateful to Christian because Christian had removed "groceries"—allegedly referring to drugs and firearms—from Thomas's home following the arrest. This call was used to tie Christian to Thomas and to contraband later found buried in the backyard of the house belonging to Christian's mother.

## II. ANALYSIS

**A.       The district court erred in denying Christian's motion to suppress.**

### *1.       Standard of review*

"When reviewing a district court's decision on a motion to suppress, we use a mixed standard of review. . . ." *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). We review findings of fact under the clear-error standard and conclusions of law de novo. *Id.* "Whether a search warrant affidavit establishes probable cause to conduct the search is a legal question that this Court reviews de novo." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). "On appeal of a district court's decision on a motion to suppress, although we must view the evidence in a light most likely to support the decision of the district court, when the district court itself is a reviewing court, this court owes the district court's conclusions no particular deference." *Id.* (citations omitted and alterations incorporated). On the other hand, "[a]n issuing judge's findings of probable cause should be given great deference by the reviewing court and should not be reversed unless arbitrarily exercised." *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (quoting *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002)).

## 2.    *Probable cause*

The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  "'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)); *see also Payton v. New York*, 445 U.S. 573, 585 (1980) ("[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" (quoting *United States v. U.S. Dist. Court for E. Dist. of Mich.*, 407 U.S. 297, 313 (1972))).

"To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Brooks*, 594 F.3d at 492 (quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)).  This requires "a nexus between the place to be searched and the evidence sought," *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006), at the time the warrant is issued, *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006).  The probable-cause standard is practical and nontechnical.  *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).  In other words, a reviewing court should consider the "totality of the circumstances" rather than "engage in line-by-line scrutiny of the warrant application's affidavit."  *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008).  But the court must limit its "review of the sufficiency of the evidence supporting probable cause . . . to the information presented in the four-corners of the affidavit."  *Frazier*, 423 F.3d at 531.

Christian argues that the warrant issued to search the Residence was not supported by probable cause because each of the affidavit's supporting facts was either stale or failed to establish a sufficient nexus between the evidence sought and the Residence.  To determine whether the affidavit supported probable cause to search the Residence, we will first assess the

significance of each piece of evidence relied upon, and then we will consider all the evidence together to determine whether the totality of the circumstances supports a finding of probable cause.

The dissent contends that our approach is inconsistent with the well-established mandate to assess probable cause by considering the totality of the circumstances. Dissent Op. 33. According to the dissent, we have engaged in a "divide-and-conquer-approach" to assess the sufficiency of the affidavit that "has no place in our law." *Id.* To the contrary, the totality-of-the-circumstances approach requires us to examine each piece of evidence in the affidavit to assess its probative value and then determine whether those pieces of evidence are as a whole sufficient to establish probable cause. *Gardenhire v. Shubert*, 205 F.3d 303, 315 (6th Cir. 2000) (noting that, in the context of an arrest, "[p]robable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of the arrest" (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999))); *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004) ("[C]ourts may not engage in a 'divide-and-conquer' analysis of facts to determine whether probable cause existed. However, neither may a court arrive at probable cause simply by piling hunch upon hunch. Thus, in assessing the totality of the circumstances, a reviewing court 'must examine the facts individually in their context to determine whether rational inferences can be drawn from them' that support a probable cause determination." (citations omitted)).

### i. *Observations of Thomas*

As noted above, officers observed Thomas "walk away from the area" of the Residence and leave in a vehicle on the day that the search warrant was issued. They followed Thomas and stopped him after an unknown period of time for a driving infraction. During the stop, the officers found approximately 20 grams of heroin in Thomas's vehicle. Crucially, the affidavit does not state that the officers saw Thomas entering or leaving the Residence, even though their surveillance was targeted specifically at that property. Nor does it say that Thomas was seen with Christian. In fact, the affidavit does not assert that there is any connection at all between Thomas and Christian.

True enough, the affidavit states that, during the traffic stop, "Rueben Thomas admitted that he had recently been at an address on Grandville Avenue in the City of Grand Rapids but denied being at 618 Grandville, contrary to observations of the law enforcement officers." But we decline to interpret this "contrary to observations" statement as an indication that officers saw Thomas actually entering or leaving the Residence itself. Officer Bush was undoubtedly aware that any evidence of Thomas being at the Residence would be highly relevant to the probable-cause determination, but chose instead to state simply that Thomas was seen "in the area"—a vague description that does not place Thomas at the Residence. Absent a direct statement that Thomas was seen entering or leaving the Residence, or even at the Residence in any sense, we are unwilling to read such a factual assertion into the affidavit.

The dissent, on the other hand, contends that the affidavit's lack of a direct statement that Thomas was at the Residence is attributable to the "haste of a criminal investigation," and that we are in effect requiring the affidavit to include "magic words," contrary to precedent from the Supreme Court. Dissent Op. 34 (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). But the affidavit's inclusion of the specific, nontechnical language "in the area" appears to us more consistent with an honest acknowledgement that the officers did not observe Thomas on the property itself. In fact, the common-sense meaning of the language "in the area" suggests that Thomas was near but not at the Residence when observed.

The dissent also notes that the affidavit "need only have alleged 'facts that create a reasonable possibility'" that "Thomas was seen leaving 618 Grandville." Dissent Op. 35. This statement reflects a subtle but crucial error. The affidavit must contain facts that establish probable cause that *evidence of drug activity would be present in the Residence at the time of the search*. Stated differently, probable cause must be established in relation to whether there is evidence of drug activity in the Residence, not in relation to whether Thomas was seen leaving the Residence. *See United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) ("To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" (quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009))).

So even if the affidavit had stated that Thomas was seen on the lawn or in the driveway of the Residence, we would still have to speculate that Thomas was at one point inside the Residence and, taking the speculation one step further, that he engaged in drug activity while inside. Such an inference is made even more tenuous by the fact that there is nothing in the affidavit to suggest that the heroin later recovered during the traffic stop was on Thomas's person, rather than simply in the car, when Thomas was observed walking in the area of the Residence by the officers.

This leaves us to consider the significance of the following: A single individual with no known connection to Christian was seen walking away from the area of the Residence and then leaving that area in a car. He was followed by officers to a subsequent location where a traffic stop was conducted, during which heroin was found in the vehicle. If this provides any nexus at all between evidence of drug trafficking and the Residence, that nexus is so speculative and attenuated that it cannot, without more, support a finding of probable cause. *See United States v. Arvizu*, 534 U.S. 266, 274 (2002) (noting that a hunch is insufficient to support a finding of reasonable suspicion for a *Terry* stop, and that the reasonable-suspicion standard is easier to satisfy than the probable-cause standard).

To conclude otherwise would allow officers seeking a warrant to rely on speculation that drug activity near a residence is related to that residence, significantly lowering the burden for the government to show probable cause in communities where drugs are prevalent. Because the government cites no case that would support such a proximity test for establishing probable cause, we find that the officers' observations of Thomas have little value on their own. But that does not end our inquiry. We must consider, as we do below, whether other evidence in the record bolsters or corroborates a connection between Thomas's alleged drug activity and the Residence, such that the magistrate could have found a fair probability that evidence of drug trafficking would be found at the Residence at the time of the search.

### ii.     *Tips from unidentified informants*

The affidavit further states:

> Within the last four months, your affiant has been involved in or received information from several debriefs of subjects who have stated that Tyrone Christian is a large scale drug dealer.  These subjects further stated that they have purchased large quantities of heroin and crack cocaine from Christian at 618 Grandville Avenue in the last four to five months.

Officer Bush's assertion that he received information from several unidentified subjects omits critical particulars.  Among other things, the affidavit does not tell us the number of individuals who made the statements ("several" could indicate as few as three individuals), explain what constituted a "debrief," identify the contexts in which the debriefs occurred, or specify the date that the information was received (all of the information could have been received as many as four months before the search).

More importantly, Officer Bush's statement gives no indication as to the veracity or reliability of the information obtained from the "subjects."  We have no way of knowing whether Officer Bush or another officer had a relationship with any of the subjects.  Nor did Officer Bush assert any belief concerning the reliability or veracity of the subjects' comments, let alone provide any factual basis by which the magistrate could assess their reliability or veracity.  *See United States v. Helton*, 314 F.3d 812, 822 (6th Cir. 2003) (noting that, under Sixth Circuit precedent, an affidavit "must contain a statement about some of the underlying circumstances indicating the informant was credible or that his information was reliable" (quoting *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999))).

The affidavit's complete failure to address the credibility and reliability of the information provided by the subjects is even more glaring when juxtaposed with Officer Bush's inclusion of a paragraph supporting the credibility and reliability of the confidential informant who conducted the controlled buy in January 2015.  With regard to this latter informant, Officer Bush stated that "[y]our affiant was able to confirm much of the information provided by the credible and reliable informant through information maintained by the Grand Rapids Police Department, other credible and reliable informants, public information sources and other law enforcement agencies."  Because Officer Bush knew that hearsay statements from informants

should be accompanied by an explanation of their credibility and reliability, his failure to do so with respect to information obtained from the unidentified subjects implies the absence of any such indicia.

An affidavit establishing probable cause based on an informant's tip must also provide facts identifying the basis of the informant's knowledge. *Frazier*, 423 F.3d at 532. "The 'basis for knowledge' factor uses the degree of detail in a tip to infer whether the tipster 'had a reliable basis for making his statements.'" *Helton*, 314 F.3d at 822 (quoting *Smith*, 182 F.3d at 477). In *Helton*, the court determined that an anonymous tip was "sparse in relevant detail," causing it to "lose[] persuasive value" where the informant stated that he had been inside the residence that was searched and had seen stacks of money, but "did not describe which rooms he or she visited, where he or she saw the stacks of money, how high the stacks of money were, or how the stacks were stored." *Id.*

Although Officer Bush's affidavit suggests that the basis of the subjects' knowledge was that they had each purchased drugs from Christian at the Residence, the affidavit provides almost no details about the purchases beyond identifying the types of drugs involved. The unidentified subjects did not state exactly when they purchased drugs from Christian, the amount of the drugs purchased, or whether they entered the Residence and saw any controlled substances or other evidence of drug trafficking inside. This lack of detail further reduces the persuasive value of the information obtained from these sources.

"[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532. There is no evidence in the present case that the police corroborated any of the information obtained from the unidentified subjects. The affidavit does not indicate that the police engaged in any ongoing surveillance of the Residence, conducted subsequent controlled purchases, or otherwise tried to verify that Christian was currently using the Residence to sell drugs. And although the police established surveillance of the Residence on the very day that the affidavit was executed, this surveillance did not yield any observations by law enforcement suggesting that Christian was then using the Residence as a base of operations.

Because the information from these unidentified subjects lacks any indicia of veracity or reliability and was not corroborated by subsequent police investigation, it should be accorded very little weight in determining whether there was probable cause to search the Residence. *See United States v. McPhearson*, 469 F.3d 518, 524 n.3 (6th Cir. 2006) ("Thus, an allegation of drug dealing based on information from an untested confidential informant is insufficient to establish probable cause to search the alleged drug dealer's home. However, where the allegation of drug dealing is coupled with independently corroborated information from police officers, it may be sufficient to establish probable cause."); *Helton*, 314 F.3d at 822 (concluding that little weight should be given to statements from an informant whose reliability has not been determined); *see also United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (noting that an anonymous tip, even one that is "rich in particulars," will not be enough to establish probable cause if only innocent details are corroborated by the police, but holding that a magistrate may find probable cause to search a residence when "a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past").

### iii.      The January controlled buy

Christian also contends that the evidence of the January 2015 controlled buy was stale when the affidavit was executed in September 2015 and thus could not have supported a finding of probable cause to search the Residence. The government disputes this contention, arguing that because the officers sought records and indicia of continuous drug trafficking, the evidence was not stale.

"[S]tale information cannot be used in a probable cause determination." *United States v. Perry*, 864 F.3d 412, 414 (6th Cir. 2017) (quoting *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009)); *see also United States v. Harris*, 255 F.3d 288, 299 (6th Cir. 2001) ("Because probable cause to search is concerned with facts relating to a presently existing condition, . . . there arises the unique problem of whether the probable cause which once existed has grown stale." (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998))). Whether evidence is stale is a flexible inquiry that does not "create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *United States v. Greene*, 250 F.3d 471, 480

(6th Cir. 2001) (quoting *Spikes*, 158 F.3d at 923). "A key but by no means controlling issue is the length of time between the events listed in the affidavit and the application for the warrant." *United States v. Leaster*, 35 F. App'x 402, 406 (6th Cir. 2002). Courts should consider several factors, including:

> [1] [t]he character of the crime (chance encounter in the night or regenerating conspiracy?), [2] the criminal (nomadic or entrenched?), [3] the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [4] the place to be searched (mere criminal forum of convenience or secure operational base?).

*Greene*, 250 F.3d at 480–81 (quoting *Spikes*, 158 F.3d at 923).

### a. Second and fourth factors

There is little question that the second and fourth factors weigh in favor of finding that the evidence of the January controlled buy was not stale. The affidavit supports the conclusion that Christian had been occupying the Residence in Grand Rapids since at least 2009 and was thus "entrenched" in the community. *See Frechette*, 583 F.3d at 379 (finding that the defendant was entrenched when evidence in the affidavit indicated that he had lived in the residence in question for 16 months). Moreover, courts have repeatedly held that a defendant's residence "is clearly a 'secure operational base.'" *Id.* (citing *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009)); *see also United States v. Powell*, 603 F. App'x 475, 478 (6th Cir. 2015) (noting that an individual's home "is more like a secure operational base than a mere forum of convenience").

### b. First factor

The first and third factors, however, weigh in favor of finding that the evidence of the controlled buy was stale. With regard to the first factor, "[i]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988) (quoting *United States v. Haimowitz*, 706 F.2d 1549, 1554–55 (11th Cir. 1983)). The Sixth Circuit has used both the terms "protracted and continuous" and "ongoing and continuous." *Compare Perry*, 864 F.3d at 415, *with United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). Both variations appear to encompass two

principles: that the conduct extended over a significant period of time and that it continued up to (or close to) the time of the search. (For clarity, we will use "protracted" for the first principle and "continuous" for the latter.) The key question, then, is whether the affidavit contains facts supporting an inference that Christian was engaged in recurrent or sustained drug-trafficking activity up to the time of the search.

> As this circuit has pointed out:

> The crime at issue in this case—the sale of drugs out of a residence—is not inherently ongoing. Rather, it exists upon a continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den. The inclusion of outdated information has been insufficient to render an entire affidavit stale when the affidavit as a whole establishes that the criminal activity in question is ongoing and continuous, or closer to the "drug den" end of the continuum.

*Hython*, 443 F.3d at 485. But if the affidavit, taken as a whole, suggests that the defendant is engaged in something closer to the "occasional sale from . . . personal holdings[,]" *id.*, then "information goes stale very quickly 'because drugs are usually sold and consumed in a prompt fashion[,]'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (quoting *Frechette*, 583 F.3d at 378).

Again, we must focus on what the warrant application establishes through its factual assertions, not the conclusory statements made by the affiant. *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (finding that a warrant application demonstrated continuous illegal firearm activity where it stated that the defendant possessed two firearms, had used a firearm to rob a drug trafficker one month prior, was recently arrested for carrying a concealed weapon, and was also recently arrested for possession of a stolen vehicle where a gun was found in the vehicle). Here, Officer Bush explains that "a credible and reliable informant" engaged in a controlled purchase of drugs from Christian at the Residence in January 2015, eight months before Officer Bush sought the warrant at issue in this case. But the affidavit provides almost no detail regarding the controlled buy—it does not state whether the officers observed the buy, identify the type or amount of the controlled substance purchased, indicate how the purchase was initiated, or reveal if the informant had purchased drugs from Christian previously. Nor does the

affidavit disclose whether the informant saw large quantities of drugs in Christian's possession or in the Residence. *See United States v. Abernanthy*, 843 F.3d 243, 255 (6th Cir. 2016) (noting that a large quantity of drugs found in a trash can outside of a residence would suggest "repeated and ongoing drug activity in the residence"). Nothing about the January 2015 single controlled buy of an unknown quantity of an unknown drug by an informant with an unknown relationship to Christian suggests that Christian was engaged in protracted or continuous drug trafficking.

In denying Christian's motion to suppress, the district court recognized that the credible informant engaged in only a single buy in January 2015, but emphasized that the informant provided information describing Christian's involvement in a "more extensive network of trafficking." A review of the affidavit, however, does not support the district court's observation. The affidavit states that the credible informant "provided information on several drug traffickers including Tyrone Christian." This information consisted of "names, nicknames, phone numbers, residences utilized by the drug traffickers and information regarding specific drug transactions." But the affidavit gives no explanation as to what information the informant provided relating to Christian specifically. Nor does it suggest that Christian was in cahoots with the other alleged drug traffickers so as to imply his involvement in an extensive and organized network.

This vague and conclusory reference to Christian as a drug trafficker is insufficient. "A magistrate . . . must base determination of probable cause on sufficient information for the exercise of independent judgment rather than merely ratifying the bare conclusions of others." *United States v. Hoover*, 755 F.2d 933, *2 (6th Cir. 1985) (unpublished table decision); *see also United States v. Gaston*, 16 F. App'x 375, 378–79 (6th Cir. 2001) ("It is not enough that the police officer have probable cause to believe that the things to be seized may be found in the premises to be searched, or that the police officer present to the magistrate a conclusory statement that probable cause exists; the officer must present to a neutral magistrate sufficient facts to permit the magistrate to make his own independent judgment that there is probable cause.").

Here, the four corners of the affidavit reflect only a single purchase from a reliable informant eight months before the search and no other credible evidence of drug activity beyond

four prior drug convictions ranging from 4 to 19 years old (the significance of these drug convictions for the probable-cause determination will be discussed in further detail below). We therefore conclude that the affidavit does not establish that Christian was engaged in protracted and continuous drug trafficking. *Cf. United States v. Sinclair*, 631 F. App'x 344, 348 (6th Cir. 2015) (evaluating the staleness factors and concluding that the crime at issue was "an ongoing drug trafficking conspiracy" when a confidential informant reported purchasing heroin from the defendant "for several years," and the officers observed the defendant engaging in activity consistent with drug trafficking over the most recent 12 months, with the last observation occurring just 15 days before the search warrant was executed at the defendant's residence); *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (finding protracted and continuous drug trafficking where a reliable confidential informant reported purchasing drugs from the defendant at his residence at least 12 times, the last purchase occurring 23 months before the search warrant executed, because the informant also stated that a package was sent from the residence to a known drug dealer less than one month prior to the execution of the warrant).

### c.   *Third factor*

With regard to the third *Spikes* factor—whether the evidence to be seized is of enduring utility to the holder—the government contends that the warrant sought not only controlled substances, but also records of drug trafficking and firearms used in drug trafficking. These latter two categories of evidence, it argues, are likely to endure, even if controlled substances themselves are not. To support this argument, the government relies on *United States v. Burney*, 778 F.3d 536 (6th Cir. 2015). But *Burney* is distinguishable from the present case because there was no dispute that the 17-page affidavit in *Burney* provided sufficient evidence that the property had been used as a stash house for "a large-scale drug trafficking and money laundering operation— . . . a regenerating, enduring criminal enterprise that bears no resemblance to a 'chance encounter in the night.'" *Id.* at 538, 541–42. Such an extensive operation was likely to involve "scales, weapons, safes, bagging materials, and the like," evidence that was "not readily consumable" and thus unlikely to "be consumed or to disappear." *Id.* at 541.

In his affidavit in the present case, Officer Bush acknowledged the distinction between those who occasionally sell from their own supply—and thus produce little lasting evidence—

and those who sell regularly for profit using extensive networks that likely involve durable evidence like records and firearms.  Although Officer Bush stated in the affidavit that he was seeking records and firearms related to extensive drug-trafficking operations, this statement assumes what the affidavit tried and failed to prove by substantial evidence—that Christian was engaged in organized and extensive drug-trafficking operations likely to involve not only controlled substances, but also records and firearms.

Because the government has provided credible evidence of just one sale of an unknown quantity of a controlled substance in January 2015, rather than "a large-scale drug trafficking and money laundering operation," it failed to provide a reason to believe that records of drug trafficking and firearms would be found at the Residence.  Whether those types of evidence are durable is thus irrelevant.  And "'because drugs are usually sold and consumed in a prompt fashion[,]'" evidence of a single drug sale became stale "very quickly" and well before the search was executed eight months later.  *See United States v. Abernanthy*, 843 F.3d 243, 250 (6th Cir. 2016) (quoting *Brooks*, 594 F.3d at 493); *see also Hython*, 443 F.3d at 486 (noting the limited evidentiary value of an undated controlled buy absent evidence of any recent drug activity at the residence).  Consequently, we find that the third factor weighs in favor of finding the evidence of the controlled buy to be stale.

### d.      *Conclusion on staleness*

The first and third *Spikes* factors control the determination of whether evidence of the controlled buy is stale in this case.  Although Christian is entrenched in the community and his residence would be a secure base of operations, the key question is whether evidence of drug activity would be found there at the time of the search.  With no reliable evidence of continuous and protracted drug activity, the eight-month-old controlled buy was stale.

This court's decision in *United States v. Brooks*, 594 F.3d 488 (6th Cir. 2010), offers strong support for our conclusion.  *Brooks* considered whether an affidavit was sufficient to establish probable cause to search the defendant's residence for evidence of drug crimes.  Crucially, the affiant-officer arrested the defendant for aggravated drug trafficking at the defendant's residence and, in the process, smelled marijuana and observed marijuana seeds in

plain view, as well as found $1,000 in cash on the defendant after conducting a pat-down search. Later that day, the affiant-officer executed the affidavit in support of the search warrant. On review, this court held that the officer's observations alone were sufficient to support probable cause. *Id.* at 495.

But the affidavit in *Brooks* also contained several other pieces of information that by themselves would not, according to the court, have established probable cause. These were: (1) four tips from confidential informants, stating that the defendant was trafficking in cocaine, with the tips ranging from one to five years old at the time that the affidavit was executed; (2) a six-month-old tip from a confidential informant, stating that the defendant was selling cocaine from his residence; and (3) two controlled buys made by a confidential informant six months before the affidavit was executed. The court noted that

> there is no question but that this information is stale for purposes of establishing probable cause in its own right. All of the information is regarding drug transactions that took place, at the most recent, approximately six months prior to the date of the affidavit. Given the mobile and quickly consumable nature of narcotics, evidence of drug sales or purchases loses its freshness extremely quickly.

*Id.* at 493 n.4. Similarly, the single controlled buy conducted in the present case was undoubtedly stale when the warrant was executed eight months later. *Cf. United States v. Yates*, 501 F. App'x 505, 511 (6th Cir. 2012) (concluding that evidence of a single drug transaction occurring at a residence was not stale when the transaction occurred within ten days of the affidavit's execution); *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003) (noting that evidence of a single controlled purchase was not stale when the warrant was issued three days later).

### iv.    Criminal history

Although "a person's criminal record [demonstrating multiple drug offenses] alone does not justify a search of his or her home[,]" *United States v. Payne*, 181 F.3d 781, 790–91 (6th Cir. 1999), it is relevant to the probable-cause inquiry, *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009). Here, the affidavit asserts that Christian, at the time that the warrant was issued, had a 19-year-old conviction for possession of less than 25 grams of cocaine and a 13-year-old

conviction for an unspecified second controlled-substance offense. Christian has an additional six-year-old conviction for delivery/manufacture of marijuana and a four-year-old conviction for delivery/manufacture of cocaine.

Whether these convictions can support a conclusion that Christian was engaged, at some point, in protracted drug activity is problematic. Precedent instructs us to consider "[t]he relative recency of a set of actions and their relative closeness in time to each other." *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017). These convictions are each several years apart and even the most recent conviction predates the controlled buy by four years. Nothing about these old convictions and the controlled buy in January 2015 is inconsistent with a conclusion that Christian was simply "effectuat[ing] the occasional sale from his or her personal holdings of drugs to known acquaintances." *See United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006).

But even assuming that these convictions, combined with the fact that two search warrants were executed at the Residence in 2009 and 2011, support a conclusion that Christian *was* engaged in protracted drug sales at the Residence at some point, there is no evidence to suggest that these sales were continuous at the time the warrant was sought and executed in September 2015. *See United States v. Helton*, 314 F.3d 812, 822 (6th Cir. 2003) (noting that even where "the likely duration of th[e] evidence is long," evidence may still be stale if enough time has passed between the tip and execution of the warrant, and expressing concern about the staleness of a two-month-old tip that stacks of money were being stored in a residence); *United States v. Brown*, 828 F.3d 375, 384 n.3 (6th Cir. 2016) (concluding that a 12-year-old conviction for conspiracy to distribute marijuana was insufficient to establish that an individual was a known drug dealer at the time the warrant was executed).

The key issue is whether a search-warrant affidavit establishes a fair probability that the evidence sought will be found at the place identified *at the time* the warrant is executed. *Hython*, 443 F.3d at 485. Emphasizing the temporal requirement of this test, this court found in *Hython* that "[e]ven had the affidavit stated that from time out of mind, [the residence to be searched] had been a notorious drug den, some recent information would be necessary to eliminate the possibility that a transfer in ownership or a cessation of illegal activity had not taken place." *Id.* at 486; *see also United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (concluding that

the magistrate may "draw the inference that evidence of wrongdoing would be found in the defendants' homes" when the affidavit reflects "the independently corroborated fact that the defendants were known drug dealers at the time the police sought to search their homes").

The government has identified no case where a record of past drug convictions, without *recent* credible evidence of drug activity, was sufficient to establish that a defendant was engaged in protracted and continuous drug activity. Rather, this court has generally relied on past drug convictions in combination with a defendant's recent drug activity in applying the principle that, "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. White*, 874 F.3d 490, 501 (6th Cir. 2017) (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)); *see also United States v. Newton*, 389 F.3d 631, 636 (6th Cir. 2004) (noting that, "with continuing criminal operations . . . [,] the lack of a direct known link between the criminal activity and the residence" is inconsequential), *vacated on other grounds*, 546 U.S. 803 (2005); *see also White*, 874 F.3d at 494, 498 (finding that the defendant's "'numerous' drug convictions[] len[t] further credence" to an informant's recent tip that the defendant was selling narcotics from his residence, and concluding that a controlled buy conducted in a car in the driveway of the residence within the last 72 hours "was not an aberration"); *United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002) (finding probable cause to search the defendant's residence where his criminal record indicated that he had been convicted of cocaine charges and officers observed him signing for a package of cocaine delivered at a second location immediately before the issuance of the warrant).

Absent additional *recent* reliable evidence, then, old criminal convictions cannot support a finding that drug activity is continuous at the time of the search. Our legal system has long developed a strong policy against using propensity evidence to suggest an inference that an individual who has once committed a crime continues to engage in criminal activity. *See* Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Although the Federal Rules of Evidence do not come into play when deciding the validity of a search warrant, the aim of Rule 404 is similar to the purpose of the staleness rule: to ensure that decisionmakers—whether jurors or magistrates—do not improperly assume based on

past wrongs that an individual engaged in the specific criminal conduct at issue. *See Old Chief v. United States*, 519 U.S. 172, 179–82 (1997) (discussing the prejudicial nature of propensity evidence).

We thus conclude that Christian's prior criminal convictions, even considered with the eight-month-old controlled buy, do not establish that he was engaged in protracted and continuous drug activity. And absent some "independently corroborated fact that the defendant[] w[as a] known drug dealer[] at the time the police sought to search [his] home," probable cause did not exist to search the Residence based on Christian's criminal record. *See McPhearson*, 469 F.3d at 524.

### v.        *Totality of the circumstances*

As discussed above, the caselaw makes clear that the probable-cause determination must be based on the "totality of the circumstances." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). We thus evaluate the weight of the evidence when considered as a whole.

First, "[w]here recent information corroborates otherwise stale information, probable cause may be found." *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) (quoting *United States v. Henson*, 848 F.2d 1374, 1381–82 (6th Cir. 1988)), and concluding that evidence of drug residue in a residence's trash cans and an officer's recent observations of individuals leaving the residence to sell drugs nearby "refreshed . . . otherwise stale information" contained in the affidavit). But for the reasons discussed above, no reliable evidence corroborates the stale evidence in the affidavit under review.

Alternatively, evidence from an informant whose reliability is not known can be corroborated by independent information from police officers. *McPhearson*, 469 F.3d at 524 n.3; *United States v. Hammond*, 351 F.3d 765, 772 (6th Cir. 2003) (noting the "minimal probative value" of a tip from an informant of unknown reliability, but concluding that "the tip can take on an increased level of significance for probable cause purposes, if corroborated by the police through subsequent investigation"). But, as discussed above, there is no evidence that the officers here attempted to corroborate the information provided by the unidentified subjects. And even if the *previous* controlled buy could be considered to corroborate *subsequent*

information from unidentified sources, the single buy did not corroborate allegations that protracted and continuous drug activity was occurring at the Residence.

In sum, the affidavit shows that (1) search warrants were executed for drugs at the Residence in the past, (2) Christian has a history of years' old drug convictions, (3) he engaged in one sale of drugs at the Residence eight months prior to the execution of the search warrant, (4) unidentified subjects of unknown reliability reported that Christian was selling drugs in the more recent past, and (5) a man with no known connection to Christian was found to be in possession of drugs after leaving "the area" of the Residence on the date of the search-warrant affidavit. This evidence, even when considered cumulatively, fails to establish "fair probability" that drug activity was occurring at the Residence at the time the search warrant was executed. *See United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

The dissent's conclusory statement to the contrary fails to explain how the individual pieces of evidence corroborate one another. Moreover, the dissent fails to analogize the facts of this case to those of any of our prior cases that have found a warrant supported by probable cause. It instead argues that *United States v. Hines*, 885 F.3d 919 (6th Cir. 2018), "compel[s]" us to conclude that probable cause existed to search Christian's home because *Hines* makes clear that courts must consider the unique mix of evidence in each affidavit to determine if it established probable cause. Dissent Op. 37. *See Hines* 885 F.3d at 921–22 ("Not all search warrant affidavits include the same ingredients. It is the mix that courts review to decide whether evidence generated from the search may be used or must be suppressed."). But the facts of *Hines* actually lend further support for our position that the warrant here did not establish probable cause to search the Residence.

The affidavit at issue in *Hines* contained the following evidence in support of a warrant to search a home: (1) a reliable confidential informant told officers five months prior to the warrant's execution that the defendant was selling large amounts of heroin from the home; (2) a statement from the same informant that he had seen heroin at the home the day before the search; (3) several months of surveillance of the home by law-enforcement officers showing the defendant's comings and goings; (4) a tip from a second reliable confidential informant the day before the warrant's execution stating that he was meeting the defendant at a nearby club to

discuss an incoming heroin shipment; (5) officers' observations of the defendant driving "in a manner consistent with narcotics traffickers" to the club at the designated time; (6) statements from the second informant that he had received heroin from the defendant numerous times and was always instructed to meet him at the home to receive that heroin; (7) a tip from the second informant that he was instructed to collect heroin from the defendant at the home on the day that the warrant was executed; (8) three-year-old wiretaps identifying the defendant as a significant heroin trafficker; and (9) the two-year-old seizure of $33,500 from a third individual outside the home (believed to be payment from Hines for a kilogram of cocaine) and a subsequent statement from this individual that he had previously provided the defendant with heroin and cocaine. *Id.* at 922.

The evidence detailed above in *Hines* directly linked the residence to heroin trafficking at the time of the search through information from reliable informants and specific observations by officers that corroborated the information provided by those informants. And after comparing this evidence with that used to support affidavits in other cases, the court in *Hines* ultimately concluded that the affidavit at least satisfied the *Leon* good-faith standard, if not probable cause. *Id.* at 924–28.

For the reasons already discussed, the affidavit at issue here fails to establish more than a speculative connection between drug activity and the Residence at the time of the search. Unlike the affidavit in *Hines*, it contains no recent reliable evidence of drug activity at the Residence. The search warrant, accordingly, was not supported by probable cause. Under these circumstances, the deference that would otherwise be due the issuing magistrate is unjustified. *See United States v. Leon*, 468 U.S. 897, 914 (1984) ("Deference to the magistrate . . . is not boundless."); *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984) (noting that we apply a "deferential standard of review" to an issuing magistrate's probable-cause determination, but that the determination will not be upheld if the evidence, viewed as a whole, does not provide a "substantial basis" for that determination).

### 3.     Leon *good-faith exception*

"Though evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court has held that the exclusionary rule 'should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (quoting *Leon*, 468 U.S. at 905). Under the *Leon* good-faith standard, suppression should be limited to "circumstances in which the benefits of police deterrence outweigh the heavy costs of excluding 'inherently trustworthy tangible evidence' from the jury's consideration." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 907). The test is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *Id.* (quoting *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008)).

Four situations have been identified by the Supreme Court in which an officer could not reasonably believe that a search was valid, despite the issuance of a warrant. *See United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23). Christian argues that the third situation is present in this case—that the affidavit was "so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *Id.* Such a "bare bones affidavit is one that merely 'states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *McPhearson*, 469 F.3d at 526.

Determining whether an affidavit is more than "bare bones" is a "less demanding inquiry" than the inquiry into whether the magistrate had a substantial basis for concluding that an affidavit reflected probable cause. *Id.* The good-faith exception requires only "a minimally sufficient nexus between the illegal activity and the place to be searched" at the time of the warrant's execution. *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc)). But the affidavit must contain some "particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions." *McPhearson*, 469 F.3d at 526. Although the *Leon* good-faith exception does not assume that the reasonable officer has "extraordinary legal

training," *United States v. Van Shutters*, 163 F.3d 331, 337 (6ᵗʰ Cir. 1998), it does "require[] officers to have a reasonable knowledge of what the law prohibits," *Leon*, 468 U.S. at 919. Whether the good-faith standard is met is a close call in this case, but ultimately we conclude that the affidavit falls short because it does not provide any "particularized facts" connecting the Residence to drug activity at the time that the search warrant was executed.

This court's analysis in *United States v. Hython*, 443 F.3d 480 (6ᵗʰ Cir. 2006), is particularly persuasive on this issue. In that case, the affidavit contained information that the officers had, at some unidentified point, conducted a controlled buy of crack cocaine at the residence to be searched. The court found that evidence of a single controlled buy at the residence was consistent with the situation "where an individual occasionally sells drugs to acquaintances out of his or her personal holdings." *Id.* At 486. And because "the affidavit include[d] no observation of deliveries to the address, no monitoring of the frequency or volume of visitors to the house, no second controlled buy, [and] no further surveillance whatsoever," "the affidavit [wa]s patently insufficient" so that no reasonable officer could have believed that the affidavit established probable cause to search the residence. *Id.* At 486, 488–89.

Similarly, the affidavit in this case primarily relies on a single stale controlled buy to link the Residence to drug activity at the time of the search. It does not provide any credible evidence that drug activity continued at the Residence in the interim, and the single instance of contemporary surveillance did not link the Residence to drug activity by anything more than speculation that Thomas purchased drugs at the Residence on September 3, 2015.

This court has also held that the *Leon* good-faith standard was not satisfied where "the 'evidence in the affidavit connecting the crime to the residence [wa]s so vague as to be conclusory or meaningless.'" *McPhearson*, 469 F.3d at 527 (quoting *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005)) (finding that the *Leon* standard was not satisfied where the affidavit reflected that officers had arrested the defendant at his residence on an assault charge and found him in possession of cocaine, but where there was no evidence connecting the defendant or his residence to drug trafficking). It has further concluded that an affidavit did not meet the *Leon* standard where the facts it contained were so inconclusive that they did not "draw some plausible connection" between alleged drug activity and the residence to be searched.

*See, e.g.*, *Brown*, 828 F.3d at 384, 385–86 (holding that the *Leon* good-faith standard was not satisfied where the affidavit indicated that the defendant was arrested for attempting to deliver heroin 21 days prior to the search, a drug dog had alerted to the odor of narcotics in the defendant's car, the defendant exchanged text messages discussing drug prices, and the defendant had a 12-year-old conviction for conspiracy to distribute marijuana).

In contrast, this court has held an affidavit insufficient to show probable cause to search a residence but sufficient to satisfy the *Leon* good-faith standard where the affidavit provided *some* link between the criminal activity alleged and the residence to be searched *at the time* of the search. *See United States v. White*, 874 F.3d 490, 494, 498 (6th Cir. 2017) (finding the *Leon* good-faith standard satisfied where the affiant stated that officers received a tip that the defendant, who had an extensive criminal history involving drugs, was selling drugs from his residence, and the officers initiated, observed, and recorded a controlled buy from the defendant in the driveway of the residence less than 72 hours before the affidavit was executed); *United States v. Higgins*, 557 F.3d 381, 391 (6th Cir. 2009) (concluding that the affidavit met the *Leon* good-faith standard where it stated that a named informant told officers that he had purchased drugs from the defendant's residence earlier that day, even though there were questions about the informant's reliability); *Frazier*, 423 F.3d at 536 (finding the *Leon* good-faith standard satisfied when the affidavit reflected that two recorded controlled buys were conducted by an informant at the defendant's previous residence seven months before the search, that drugs were found at the defendant's previous residence two months before the search, that a named informant reported buying two pounds of marijuana from the defendant weekly, and that phone records showed that the defendant was in constant contact with known drug dealers); *Carpenter*, 360 F.3d at 593 (finding the *Leon* standard satisfied where the affidavit supporting a warrant to search the residence alleged that a police officer conducting an aerial search spotted numerous marijuana plants connected by a road directly to the residence).

Contrary to the affidavit evidence considered in *White*, *Higgins*, *Frazier*, and *Carpenter*, Christian's criminal history and the January 2015 controlled buy do not establish a nexus between the Residence and drug activity *at the time of the search*. This nexus is required for the *Leon* good-faith exception to apply. *See Hython*, 443 F.3d at 488–89.

And although closer in time to the execution of the search, the information received from the unidentified subjects indicating that Christian was engaged in large-scale drug trafficking from the Residence was "so vague as to be conclusory or meaningless." *See Frazier*, 423 F.3d at 536 (quoting *Carpenter*, 360 F.3d at 596). Where statements "are heavily discounted due to their minimal trustworthiness and reliability, they add little to the probable cause determination" and, accordingly, "a reasonable officer would recognize that without more corroboration, the . . . affidavit came well short of establishing probable cause." *United States v. Helton*, 314 F.3d 812, 825 (6th Cir. 2003).

An investigation by law enforcement can corroborate tips of unknown reliability. But the observation of Thomas "walk[ing] away from the area" of the Residence before he was later found with heroin in his vehicle does not provide this additional corroboration. At best, it allows for only speculation that Thomas purchased the drugs from the Residence. Such speculation cannot reasonably be thought to support a finding of probable cause. *See White*, 874 F.3d at 498 (noting that a barebones affidavit is one that contains "a mere affirmation of suspicion and belief without any statement of adequate supporting facts" (quoting *Nathanson v. United States*, 290 U.S. 41, 46 (1933))). As a result, we conclude that no reasonable officer would have believed that the affidavit established probable cause to search the Residence at the time the affidavit was executed.

We believe that our conclusion is in line with the policy behind the *Leon* good-faith exception to the exclusionary rule. A reasonable officer understands that allegations of protracted and continuous drug activity must be supported by information from informants whose reliability, veracity, and basis of knowledge have been shown. If no such credible information exists, the allegations must be corroborated by independent investigation by law-enforcement officers. Here, the police failed to provide the necessary corroboration. There is no evidence in the affidavit that they engaged in ongoing or repeated surveillance, arranged subsequent controlled buys, or otherwise monitored for "hallmarks of drug dealing" at the Residence. *See United States v. McPhearson*, 469 F.3d 518, 527 (6th Cir. 2006); *Hython*, 443 F.3d at 486, 488–89. By suppressing the evidence in this case, we will incentivize the police to take such corroborative action in the future.

**B.** **The district court erred in admitting the recorded telephone call because it constituted inadmissible hearsay.**

Christian also challenges the district court's decision to admit a recorded telephone call between Thomas and Thomas's girlfriend, Tanisha Edwards, arguing that the conversation was inadmissible hearsay. The government contends that the district court properly admitted the conversation under Rule 801(d)(2)(E) of the Federal Rules of Evidence as the statement of a coconspirator.

### 1. *Standard of review*

Rule 801(d)(2)(E) excludes from the definition of hearsay a statement offered against an opposing party when it is "made by the party's coconspirator during and in furtherance of the conspiracy." In order for an out-of-court statement offered for the truth of the matter asserted to be admitted under this section, the government must show by a preponderance of the evidence that (1) a conspiracy existed, (2) the defendant against whom the statement is admitted was a member of the conspiracy, and (3) that the statement was made in the course and in furtherance of the conspiracy. *United States v. Martinez*, 430 F.3d 317, 325 (6th Cir. 2005). "These findings, often called *Enright* findings, must be made by the district court." *Id.* (citing *United States v. Enright*, 579 F.2d 980, 986–87 (6th Cir. 1978)).

Determining whether each of the three requirements was satisfied is a question of fact that we review under the clear-error standard. *United States v. Warman*, 578 F.3d 320, 335 (6th Cir. 2009). But the ultimate decision to admit evidence under Rule 801(d)(2)(E) is reviewed to determine whether the district court abused its discretion. *Martinez*, 430 F.3d at 326. "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Id.* (quoting *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005)). This court has repeatedly emphasized its "preference for specific *Enright* findings," *id.* at 328, but it has not "mandated a particular degree of specificity," *United States v. Kone*, 307 F.3d 430, 441 (6th Cir. 2002).

So although a complete failure to make *Enright* findings is undoubtedly an abuse of discretion, *United States v. Mahar*, 801 F.2d 1477, 1495 (6th Cir. 2007), we may conclude that a

district court's finding relating to an individual *Enright* requirement was implicit, *Martinez*, 430 F.3d at 327–28. "[C]onclusory [*Enright*] findings[, moreover,] have been upheld when the court could conclude with confidence that the government had met its burden." *Id.* at 328; *cf. Kone*, 307 F.3d at 441 (noting that "'a mere conclusory statement will not always suffice' when the government has not met its burden of proof" (quoting *United States v. Curro*, 847 F.2d 325, 329 (6th Cir. 1988))).

If the appellate court concludes that the district court abused its discretion, it must then determine whether that error was harmless. *Kone*, 307 F.3d at 436–37. "[W]e do not reverse a conviction if the error is harmless, meaning that 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Kelsor*, 665 F.3d 684, 696 (6th Cir. 2011) (quoting *United States v. Lopez-Medina*, 461 F.3d 724, 741 (6th Cir. 2006)).

### 2.    **Enright** *findings*

The telephone call at issue occurred while Thomas was in jail, after he had been arrested by the police for possession of heroin. At trial, the government noted that Edwards called Thomas in jail, and it summarized the call as follows:

> Rueben Thomas is told by Tanisha Edwards that he ought to be more grateful to Mr. Christian . . . for helping him because Christian came and got the "groceries" out of the house. Edwards is going to say that when she said "groceries" she meant the gun and what she assumed to be drugs that she took out of there.

The government conceded that it did not "have any evidence that Tanisha Edwards was involved in drug trafficking herself." It instead contended that Christian and Edwards were participating in an uncharged "obstruction-of-justice conspiracy." According to this theory, Christian and Edwards conspired to remove evidence of drug trafficking from Thomas's home.

Although the government contends that the district court properly applied the *Enright* test when admitting the recorded call, it appears to concede that the court did not make specific findings regarding the final factor: whether Edwards's statement was made in the course of and in furtherance of the conspiracy. A review of the trial transcript shows that the court's *Enright* analysis was focused solely on the first two factors—the existence of a conspiracy and the

membership of Christian and Edwards in that conspiracy.  The court's failure to address the final *Enright* factor, however, does not constitute an abuse of discretion if the record is otherwise clear that the government met its burden with respect to that factor.  We conclude that the government has not done so.

"A statement is considered to be in furtherance of the conspiracy 'if it is intended to promote the objectives of the conspiracy.'" *United States v. Darwich*, 337 F.3d 645, 657 (6th Cir. 2003) (quoting *United States v. Monus,* 128 F.3d 376, 392 (6th Cir.1997)).  "Whether a statement was in furtherance of a conspiracy turns on the context in which it was made and the intent of the declarant in making it." *United States v. Warman*, 578 F.3d 320, 338 (6th Cir. 2009).  "[M]ere idle chatter or casual conversation about past events is not considered a statement in furtherance of the conspiracy." *United States v. Conrad*, 507 F.3d 424, 430 (6th Cir. 2007) (quoting *Darwich*, 337 F.3d at 657).

If, as the government contended at trial, the conspiracy was one "to remove incriminating evidence from Thomas's home so that Thomas could avoid further legal problems," then the aim of the conspiracy had already been accomplished at the time of the call.  "A conspiracy is completed when the intended purpose of the conspiracy is accomplished." *United States v. Mayes*, 512 F.2d 637, 642 (6th Cir. 1975).  Edwards's statement was not made, therefore, in the course of and in furtherance of the conspiracy.  *See Conrad*, 507 F.3d at 430 ("[O]ut-of-court statements made *after* the conclusion of the conspiracy are not made 'in furtherance of the conspiracy,' and are thus not admissible under the co-conspirator exception." (emphasis in original)).  Rather, the statement appeared to be commentary about past events, intended only to inform Thomas of what had happened but not to induce his participation in the alleged conspiracy.

The government now attempts to argue that, despite its own characterization of the conspiracy as one "to remove incriminating evidence," the conspiracy was actually broader in scope:  "It was not simply to hide evidence.  It was to keep Thomas quiet and continue the drug trafficking scheme."  But the government did not argue for such a broad definition of the conspiracy at the trial level.  Nor has it identified any evidence indicating that Edwards intended to "keep Thomas quiet" or linking Edwards to an agreement to engage in drug trafficking.  The

district court, moreover, never explicitly identified the scope or aim of the conspiracy in which Christian and Edwards were allegedly involved, implying that it agreed with the narrower scope of the conspiracy as identified by the government at trial.

Christian also raises a question of whether the alleged conspiracy—a conspiracy to remove incriminating evidence from Thomas's home and thus to obstruct justice—is a conspiracy that qualifies a statement for admission pursuant to Rule 801(d)(2)(E). As the Supreme Court has explained:

> [A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment. As was there stated, allowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces. Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators.

*Grunewald v. United States*, 353 U.S. 391, 401–02 (1957); *see also Krulewitch v. United States*, 336 U.S. 440, 444 (1949).

This court has recognized that *Grunewald* establishes that "an agreement to conceal a completed crime does not extend the life of the conspiracy," and that the Supreme Court rejected "the notion that after the central objectives of a criminal conspiracy have succeeded or failed, a subsidiary phase of the conspiracy, which has the conspiracy's concealment as its sole objective, always survives." *United States v. Howard*, 770 F.2d 57, 60 (6th Cir. 1985). But "[i]n conspiracies where a main objective has not been attained or abandoned and concealment is essential to success of that objective, attempts to conceal the conspiracy are made in furtherance of the conspiracy." *United States v. Gardiner*, 463 F.3d 445, 463 (6th Cir. 2006) (quoting

*Howard*, 770 F.2d at 61); *cf. United States v. Etheridge*, 424 F.2d 951, 964 (6th Cir. 1970) ("If the central object of the conspiracy has been accomplished, evidence of subsequent events designed to conceal that accomplishment cannot be presented under the theory that there was an implied conspiracy to conceal the completed crime.").

Because the government concedes that Edwards was not a party to any drug-trafficking conspiracy, any question of whether the concealment was intended to further Christian's alleged drug trafficking is irrelevant. Nor need we address whether an alleged conspiracy to conceal evidence is the type of conspiracy that can qualify a statement for admission pursuant to Rule 801(d)(2)(E) because, as discussed above, there is no evidence in the record that Edwards's statement was made in the course of and in furtherance of the alleged conspiracy to remove evidence from Thomas's home. We thus have no basis to "conclude with confidence" that the government satisfied its burden as to the third *Enright* finding. *See United States v. Martinez*, 430 F.3d 317, 328 (6th Cir. 2005). In sum, the district court abused its discretion in admitting the telephone conversation as evidence. Whether this error was harmless is moot because the illegal search of the Residence already requires a new trial in this case.

## III. CONCLUSION

The question of whether a reasonable officer could have believed that the search warrant was supported by probable cause is a close call in this case. But this court's relevant precedents, including *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006), convince us that the supporting affidavit was simply inadequate to establish a good-faith belief in a fair probability that drugs would be found at the Residence on the date of the search.

True enough, the affidavit permits speculation of such drug activity. But the probable-cause standard requires more. *See United States v. Arvizu*, 534 U.S. 266, 274 (2002). These cases of legalized home invasions are not ones where the ends justify the means. The Fourth Amendment's goal of protecting individuals from unreasonable searches of their homes outweighs the occasional loss of incriminating evidence obtained by overzealous law-enforcement officers.

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

ROGERS, Circuit Judge, dissenting. Based on a five-page-long search-warrant affidavit—which included evidence from a confidential informant and other sources, a controlled buy, and direct police-officer surveillance—a neutral and detached magistrate determined that there was probable cause to search 618 Grandville Avenue, Tyrone Christian's home, for evidence of drug trafficking. That search uncovered a large amount of heroin, some cocaine, and two loaded guns. Christian argues on appeal that the search was not supported by probable cause because each piece of evidence assertedly could not have independently authorized the search. However, reading each piece of evidence in that way—alone and in the most uncharitable light possible—distorts the narrow scope of our review prescribed by *Illinois v. Gates*, 462 U.S. 213 (1983). Such a hyper-technical, line-by-line scrutiny of each factual allegation patently violates the common-sense, totality-of-the-circumstances approach to probable cause that multiple precedents compel us to apply. Earlier this year the Supreme Court cautioned that "this kind of divide-and-conquer approach" has no place in our law. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). To suppress the evidence seized in reliance on the robust warrant here is to ignore that clear admonition.

The search-warrant affidavit at issue here provided an ample basis for probable cause, and the question is really not even close. The affidavit first outlined Christian's extensive history with drugs, which included four felony drug convictions from 1996, 2002, 2009, and 2011, at least two of which were for drug trafficking. In 2009 and 2011, search warrants executed at Christian's home, 618 Grandville, the same place searched here, uncovered evidence of drug trafficking that each time resulted in Christian's arrest.

The affidavit next detailed the reasons why officers believed that Christian had gone back into business. In December 2014, a "credible and reliable informant" advised Officer Bush, the affiant, that Christian was again dealing drugs. The informant also provided information about other traffickers, including "names, nicknames, phone numbers, residences utilized by the drug traffickers and information regarding specific drug transactions." Officer Bush independently

corroborated "much of the information provided" by this informant. In January 2015, under the direction of Officer Bush, the informant executed a controlled purchase of drugs from Christian. In addition, "[w]ithin the last four months" from the date of the search, meaning from May to September of 2015, several other informants stated that "Tyrone Christian is a large scale drug dealer" and that "they [had] purchased large quantities of heroin and crack cocaine from Christian at [his residence] in the last four to five months."

That brings us to September 3, 2015, the day of the search, when, according to the affidavit, officers established surveillance "at 618 Grandville Avenue." The officers observed Reuben Thomas "walk away from the area of 618 Grandville Avenue and leave the area in a vehicle." After stopping him for a traffic violation, officers found "approximately 20 grams of heroin" in the form of "'chunk[s]' that appeared to have been removed from a larger portion of heroin." Thomas denied having been at 618 Grandville but admitted having been at another address on that street. Crucially, the affidavit recounted that Thomas's denial was "contrary to the observations of the law enforcement officers."

Viewing the "totality of the circumstances," *Florida v. Harris*, 568 U.S. 237, 244 (2013), through the "lens of common sense," as the Supreme Court has instructed, *id.* at 248, the conclusion is inescapable: there was probable cause to believe that a search of 618 Grandville would uncover evidence of drug trafficking. Most readers of the affidavit would have been surprised if it did not.

Indeed, one element of the affidavit was independently sufficient for probable cause: the surveillance of Reuben Thomas. Christian argues that there was no "nexus" between Thomas and 618 Grandville because the affidavit states merely that officers saw Thomas "walk away from the area of 618 Grandville Avenue," rather than entering or leaving that residence. But that selective, out-of-context reading is contradicted even by other parts of the affidavit, which later states that "Reuben Thomas . . . denied being at [the Residence], *contrary to the observations of the law enforcement officers*." (Emphasis added.) While this is not a direct statement that Thomas was seen entering or leaving 618 Grandville, the law does not require such a direct statement. Indeed, our precedents require us to eschew such a formal requirement. "Affidavits are not required to use magic words." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000)

(en banc). Because our job is not to reweigh the assertions in an affidavit but to ask whether the magistrate had a substantial basis for his conclusion, *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017), the latter phrase in the affidavit cannot be read out of existence. Rather, the deferential nature of our review means that we should take that latter statement—i.e., that Thomas's denying that he was at 618 Grandville was "contrary to the observations of the law enforcement officers"—to reconcile any doubt about where the officers saw Thomas walk away from.

Under that proper view of the affidavit, and paying the appropriate "great deference" to the magistrate's probable-cause determination, *Gates*, 462 U.S. at 236, the surveillance evidence provided a substantial basis for concluding that probable cause existed. Argument to the contrary is unavailing. Any possible contradiction between "from the area of" and "contrary to the observations of the officers" is more readily attributable to the "haste of a criminal investigation" under which officers often draft an affidavit supporting a search warrant. *See id.* at 235. Such haste was certainly present here: Officer Bush applied for and received the warrant on the same day as the purportedly infirm surveillance and search. To boot, police officers are mostly non-lawyers who must draft search-warrant affidavits "on the basis of nontechnical, common-sense judgments." *Id.* at 235–36. With the benefit of hindsight, perhaps the affiant could have been more precise. But our precedents do not require such an exacting degree of specificity. For example, in our recent published opinion in *United States v. Tagg*, 886 F.3d 579 (6th Cir. 2018), we held that probable cause existed to search the defendant's home for child pornography despite the supporting documents' failure to state that the defendant had actually clicked on or viewed an online file containing child pornography. *Id.* at 585–90. In doing so, we explained that probable cause is not the same thing as proof. *See id.* at 589–90. Likewise, the affidavit here need not have definitively stated that Thomas was seen leaving 618 Grandville. Rather, it need only have "alleged facts that create a reasonable probability" that he did. *See id.* From there, the remaining inferences needed to connect 618 Grandville to Christian's drug trafficking are quite straightforward, given Christian's history of dealing drugs from that address and the officers' finding heroin on Thomas. Under a common-sense reading of the affidavit, then, its description of the 618 Grandville surveillance easily exceeds the "degree of suspicion," *id.* at 586, needed to establish probable cause.

Moreover, the officers who saw Thomas were assigned to "establish[] [surveillance] at 618 Grandville Avenue," not the entire area around it. Assuming those officers were doing their jobs, the fact that they saw Thomas at all probably means that he was very near 618 Grandville. At the very least, that would be far from an arbitrary inference for a magistrate to draw. In addition, the heroin found on Thomas appeared to "have been removed from a larger portion of heroin." These facts further supported the magistrate's determination that there was probable cause to believe that evidence of drug dealing would be found at 618 Grandville.

The affidavit hardly relies alone on the Thomas surveillance, however. There is also Christian's lengthy history of dealing drugs from 618 Grandville, the controlled purchase from 618 Grandville, and the numerous tips that Christian was dealing large quantities of drugs from 618 Grandville, all of which provide further evidence still that probable cause existed. When it comes to probable cause, "the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *Wesby*, 138 S. Ct. at 588 (citing *United States v. Arvizu*, 534 U.S. 266, 277–278 (2002)). Even if each of these additional items would not suffice to establish probable cause on its own, each factual allegation is still a relevant data point in the "totality of the circumstances" constellation, rather than an independent thing to be lined up and shot down one by one. As in *Wesby*, where the Supreme Court firmly repudiated the Court of Appeals' attempt to isolate and explain away each piece of evidence, here too "the totality of the circumstances gave the officers plenty of reasons," 138 S. Ct. at 589, to believe that there was evidence of drug trafficking in Christian's home.

Probable cause therefore existed, and it is not a close call. The opposite conclusion can be reached only by engaging in the kind of "hypertechnical[,] . . . line-by-line scrutiny," *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004), of the affidavit explicitly forbidden by the Supreme Court, *see Gates*, 462 U.S. at 236, 246 n.14. In *Wesby*, the Court explained that "this kind of divide-and-conquer approach is improper," because "[a] factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." 138 S. Ct. at 589 (quoting *Arvizu*, 534 U.S. at 274). That is the case here too, where alone some parts of the affidavit might be criticized but taken together they point clearly to one conclusion: that Christian was dealing drugs from 618 Grandville.

We are accordingly compelled to hold that there was probable cause in this case, especially given the undemanding character of the probable-cause standard and the deferential nature of our review. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Tagg*, 886 F.3d at 585 (quoting *Wesby*, 138 S. Ct. at 586). Time and again the Supreme Court has emphasized that "[p]robable cause 'is not a high bar'" to clear. *Wesby*, 138 S. Ct. at 586 (quoting *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014)). Where, as here, a magistrate has issued a search warrant based on probable cause, we "do[] not write on a blank slate." *Tagg*, 886 F.3d at 586. Rather, the magistrate's probable-cause determination "should be paid great deference," *Gates*, 462 U.S. at 236 (internal quotation marks omitted) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)), and we overturn that decision only "if the magistrate arbitrarily exercised his or her authority," *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) (citing *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)). We are "not permitted to attempt a de novo review of probable cause." *Tagg*, 886 F.3d at 586 (citing *Gates*, 462 U.S. 238–39; *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000)).

The conclusion that probable cause existed to search Christian's home is compelled, moreover, by our recent published decision in *United States v. Hines*, 885 F.3d 919 (6th Cir. 2018), in which we emphasized the importance of the totality-of-the-circumstances approach: "Not all search warrant affidavits include the same ingredients," we said before recognizing that "[i]t is the mix that courts review to decide whether evidence generated from the search may be used or must be suppressed." *Id.* at 921–22. The affidavit at issue in *Hines*, like the one here, was substantial. Both included, among other things, recent evidence of drug-related activity: there, a confidential informant's statement that one day earlier he had seen drugs at the subsequently searched home; here, the officers' finding heroin on Thomas after having observed his leaving 618 Grandville. But the takeaway from *Hines* most salient here is methodological, not analogical: *Hines* requires us to look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain or the flaws of each individual component of the affidavit. Doing the former establishes probable cause here. Rejecting probable cause on the affidavit in this case therefore flies in the face of *Hines*, a well-reasoned precedential decision.

Because the affidavit contained more than enough to establish probable cause, it follows as a matter of logic that, at the very least, Christian's suppression motion was properly denied because of the good-faith exception of *United States v. Leon*, 468 U.S. 897 (1984). Under *Leon*, the exclusionary rule does not bar from admission "evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905. If somehow the affidavit at issue here could be deemed insufficient to establish probable cause, then this is a case in the very heartland of the *Leon* exception. Contrary to Christian's argument, the affidavit was not "bare bones." We reserve that label for an affidavit that "merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004) (internal quotation omitted). To further describe the bare-bones standard is to show why it does not apply here. We have said that, to be considered bare bones, an affidavit must be "so lacking in indicia of probable cause" as to make an officer's "belief in its existence . . . objectively unreasonable." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). In *United States v. Williams*, 224 F.3d 530 (6th Cir. 2000), we described how woefully deficient an affidavit must be before it meets this standard:

> An example of a "bare bones" affidavit is found in *Gates*, 462 U.S. at 239, where the Court, pointing to one from *Nathanson v. United States*, 290 U.S. 41 (1933), said, "A sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do." Another illustration was taken from *Aguilar v. Texas*, 378 U.S. 108 (1964), that "[a]n officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is likewise inadequate." *Gates*, 462 U.S. at 239. Thus, a "bare bones" affidavit is similar to, if not the same as, a conclusory affidavit. It is "one which states 'only the affiant's belief that probable cause existed.'" *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993) (quoting *United States v. Ciammitti*, 720 F.2d 927, 932 (6th Cir. 1983)).

*Williams*, 224 F.3d at 533.

Although one can split hairs about the affidavit in this case, it is impossible to deny that it contains factual allegations, not just beliefs or conclusions. Each factual allegation, regardless of any infirmities, at least purports to link Christian to drug trafficking at 618 Grandville. An affidavit need only present "some connection, regardless of how remote it may have been,"

*United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017), or, in other words, establish a "minimally sufficient nexus between the illegal activity and the place to be searched," *nited States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016), to avoid the bare-bones designation and thus be one upon which an officer can rely in good faith. Because the affidavit here established probable cause, it also necessarily satisfies this lower requirement. To hold otherwise is to equate the five-page, extensively sourced affidavit here with the short, conclusory, and self-serving ones for which the bare-bones designation has been, and ought to be, reserved.

Our decision in *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006), is almost completely inapposite here. We held there that the affidavit—which recounted only a single, undated controlled purchase—did not satisfy the good-faith exception. *Id.* at 486, 488–89. Although the affidavit linking 618 Grandville to drug dealing did include information about an arguably stale controlled purchase, the similarities between this case and *Hython* end there. Indeed, this case is like *Hython* only if, engaging in the methodological error forbidden by the Supreme Court in *Wesby*, one completely ignores most of the affidavit by discounting each item one by one. Indeed, *Hython* by negative inference supports the existence of good-faith reliance here by showing just how unsubstantiated an affidavit must be to fail to qualify under *Leon*'s good-faith exception.

This is a particularly egregious case to misapply the good-faith exception given the utter lack of police wrongdoing. The "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. As the Supreme Court explained in *Leon*, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922. This balance supports the principle that, as we said in *United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004) (en banc), the good-faith exception requires "a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." *Id.* at 595–96 (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (citation omitted)). Refusing to adhere to those decisions in a case like Christian's unduly exalts the Fourth Amendment interest marginally served by deterring nonculpable conduct over the public interest in

combatting crime—and amounts to effective disregard of Supreme Court precedent as well as our own.

Finally, it is questionable to conclude that the district court erred by admitting the challenged telephone-call evidence. In any event, any such error was harmless, given that, as explained above, the evidence obtained in accordance with the search warrant was properly admitted. Because suppression was correctly denied, the jury properly heard, for example, evidence that officers found 70 grams of heroin next to two loaded guns in Christian's basement and cocaine in another part of the house, that the DNA found on one of the guns matched Christian's, and that Christian's cell phone contained text messages about drug trafficking. Considering that evidence, the phone call added relatively little: it connected Thomas and Christian, which provided a basis for the jury to conclude that Christian had sold drugs to Thomas, and it linked Christian to a third gun. But even had that evidence not been admitted, no jury could have acquitted Christian on these charges. The evidence against him was too damning. Admitting the phone-call statements was therefore harmless.

The judgment of the district court should be affirmed.